**ALLIANZ INSURANCE COMPANY, a foreign insurance company, Plaintiff,**

v.

**Michael G. IMPERO, an individual, d/b/a Impero Construction Company; Impero Construction Company, a Washington corporation, Defendants.**

**No. C–86–232 RJM.**

United States District Court, E.D. Washington.

Aug. 21, 1986.

William P. Hight, Michael McGrorey, Hight & Green, Seattle, Wash., for plaintiff.

William G. Jeffery, Terry R. Marston, II, Oles, Morrison, Rinker, Stanislaw & Ashbaugh, Seattle, Wash., for defendants.

## MEMORANDUM DECISION

ROBERT J. McNICHOLS, Chief Judge.

The parties to this action filed Cross-motions for Summary Judgment. For the purposes of disposing of the motions, the facts as set forth in the plaintiff's Statement of Material Fact are taken as true and there are no genuine issues as to any material fact. The plaintiff's Statement of Material Fact (CP 23) is incorporated by reference in this memorandum.

The court's duty is to interpret the provisions of the builder's risk insurance contract issued by the insurer to the defendant insured.

The builder's risk policy provides coverage against "all risks of physical loss of or damage to ... property in the course of construction" upon the construction site. The exclusion in the policy which is in controversy here provides:

This policy does not cover:

  *   *   *   *   *   *

(c) Cost of making good faulty or defective workmanship, material, construction or design, but this exclusion shall not apply to the damage resulting from such faulty or defective workmanship, material, construction or design....

Counsel represent that their research has not turned up a case in Washington interpreting this particular contractual provision. They are in agreement however, as to the Washington law relating to the interpretation of insurance contracts. Basically, that is if a reasonable interpretation of the provision would result in coverage, the court must find coverage. Both parties rely upon *Kroll Constr. Co. v. Great*

*American Insurance Co.,* 594 F.Supp. 304 (N.D.Ga.1984) and *Southern Cal. Edison Co. v. Harbor Insurance Co.,* 83 Cal. App.3d 747, 148, 148 Cal.Rptr. 106 (1978). Neither of these cases is controlling but both are of assistance to the court in construing the clause in question.

There is no dispute between the parties that the insured contractor had the duty to perform the contract in accordance with the plans and specifications and did not do so. The concrete walls, when completed, contained deficiencies not in accord with the specifications, and the contractor was required to make appropriate repairs. It is the cost of these repairs for which the insured seeks recovery under the all-risk policy. The insurer declined the claim, arguing that the claim is covered by the above-quoted exclusion.

The deficiencies in the concrete resulted from the following factors. The concrete was delivered to the site in concrete trucks and pumped to the forms over a distance of approximately 120 feet. An inspector had the duty of testing the concrete by the use of "slump" tests to determine that the mix was proper. Unfortunately, the inspector performed the slump tests as the mixed concrete came out of the trucks and prior to the time it was pumped to the forms. As a result the water content in the poured concrete was inadequate. This resulted in the voids in the walls as the concrete cured. The parties agree that the fact that the inspector was not an employee of the contractor is not relevant. For purposes of this motion it is conceded that the walls were defective and the contractor had the duty to the owner to make repairs.

The defendant contractor argues that the deficiencies in the walls resulted from faulty workmanship, to-wit: the mistake of the inspector and therefore constitute "damage resulting" within the meaning of the above cited exclusion. The insurer on the other hand argues that the cost incurred was for "making good faulty or defective workmanship, material, construction or design" and is excluded from coverage.

I have concluded that the interpretation of the insurer is the correct one and the interpretation of the insured is not only incorrect but is a strained construction of the clause.

The defective concrete caused no damage to any other portion of the structure, other persons or property. The sole claim is for the cost of correcting the deficiencies in the wall. Had the wall, as a result of the deficiencies in the concrete, collapsed and caused damage to some other portion of the work, or to equipment of a subcontractor or some similar thing, we would have a different case. However, when a contractor assumes the obligation of completing a structure in accordance with plans and specifications and fails to perform properly, he cannot recover under the all-risk policy for the cost of making good his faulty work. Clearly, such a result is not contemplated by the policy and is clearly within the exclusion referred to above. I do not believe any reasonable person could read it otherwise.

IT IS THEREFORE ORDERED:

1. The plaintiff's Motion for Partial Summary Judgment is GRANTED. The court rules specifically that the claim of the defendant is not covered by the all-risk policy.

2. The defendant's Motion for Partial Summary Judgment is DENIED.

3. The parties shall advise the court within twenty (20) days of the date of this order what triable issues remain in this action.

APPENDIX

PLAINTIFF'S STATEMENT OF MATERIAL FACT

Solely for purposes of partial summary judgment, Allianz accepts as fact the following principal allegations as set forth in the examination under oath of Impero's president. Allianz does not concede the existence of triable issues except for the limited purpose of its motion for partial summary judgment.

Impero contracted with Grand Coulee and Electric City to construct a sewage treatment plant [Affidavit of William P. Hight (Hight Aff.); Ex. A at 6 and 7]. The project involved construction of a two-cell aerobic digester for processing sludge, or heavy sewage solids [Hight Aff.; Ex. A at 7 and 8]. The two cells share a common dividing wall, measure 24 by 48 feet across and rise 18 feet from the foundation with about half the exterior height covered with backfill [Hight Aff.; Ex. A at 8–9]. The concrete walls are 12 inches thick with two curtains of rebar reinforcing steel [Hight Aff. at 9].

Impero constructed the walls of the aerobic digester on May 29, 1985, by a continuous pour from 15 concrete readymix trucks [Hight Aff; Ex. A at 11, 51 and 55]. Because the walls were to be 18 feet high, the concrete had to be pumped through a hose from the trucks into the concrete form, a distance of about 120 feet [Hight Aff.; Ex. A at 11 and 12]. At the truck-site the owner's inspector Ken Duncan performed a "slump test", notwithstanding instructions to take the test at the forms [Hight Aff.; Ex. A at 42–43 and 57].

"Slump" refers to the settling of concrete before it is poured into forms and measures the relative water content [Hight Aff.; Ex. A at 39–40]. The inspector performs a "slump test" by pouring concrete into a 12–inch aluminum cone open at top and bottom, stirring the concrete continuously, removing the cone and then measuring the number of inches the unsupported concrete slumps [Hight Aff.; Ex. A at 36–39].

Impero's construction contract required a maximum four-inch slump; "the ideal zone is between 3 and 4 inches"; "[t]wo becomes a nonworkable concrete" [Hight Aff.; Ex. A at 40: Lines 23–24 and Lines 16–17].

Duncan's truck-site "slump test" failed to account for the measurement difference from there to the concrete forms. As a truck-site four-inch measurement signifies only a two-and-one-quarter to two-and-one-half-inch slump at the forms, Impero was pouring concrete with too low a slump that

"was not workable" [Hight Aff.; Ex. A at 51–52 and 46: Line 18].

About halfway through the pour Impero's crew realized the problem of low slump, overrode Duncan and added water to correct the problem pursuant to its contractual responsibility for a proper pour [Hight Aff.; Ex. A at 55 and 68]. Once the concrete had set and the forms were removed, however, Impero observed the magnitude of the remaining problem [Hight Aff.; Ex. A at 71–73]. Pouring the concrete with too low a slump had caused rock pockets and voids to form throughout the bottom eight feet of the walls [Hight Aff.; Ex. A at 32 and 34].

Rock pockets are areas where the coarse aggregate is separated from the fine aggregate (sand and cement) leaving small, even minute, holes around the coarse aggregate; voids are major rock pockets [Hight Aff.; Ex. A at 18–19].

As the project was funded by government bodies including the Department of Energy and Environmental Protection Agency, they called in the Corps of Engineers for an assessment [Hight Aff.; Ex. A at 74]. Based upon the Corps' recommendation Impero could provide an acceptable repair method by either tearing down the walls and starting over or by effecting corrective repairs [Hight Aff.; Ex. A at 74–75].

Impero contracted with Adhesive Engineering to effect repairs by a method acceptable to the owner [Hight Aff.; Ex. A at 76–77]. Impero thus completed repair of the rock pockets and concrete voids at a cost of $74,608.00 [Hight Aff.; Ex. A at 99; Ex. 2, "Sworn Statement In Proof of Loss"].

Impero then sought a recovery under its insurance contract with Allianz. Allianz is a foreign insurance company licensed to engage and engaged in the business of selling insurance policies in the State of Washington [Complaint, paragraph 1]. A true and correct copy of pertinent provisions of the parties' contract is attached as Exhibit A to the Complaint [Complaint, paragraph 3].

Impero submitted a proof of loss and claim for coverage to Allianz for the cost of repair, subject to a $5,000.00 deductible [Hight Aff.; Ex. A; Ex 2; Complaint, Ex. A; "Endorsement-Deductibles"]. Impero claimed its loss was caused by "[d]efective workmanship by inspector causing resulting damage" [Hight Aff.; Ex. A; Ex. 2, "Sworn Statement in Proof of Loss"].

Allianz examined Impero's president under oath during its evaluation of the claim [Hight Aff.; Ex. A]. Impero's president made clear that due to Duncan's "faulty workmanship to test at the truck for the slump test versus at the form" Impero poured "the concrete with too low a slump", and that "the only dollars in this claim related to property damage [ ] associated with the repairs of rock pockets and concrete voids" [Hight Aff.; Ex. A at 46: Lines 20–22, 32: Lines 15–16, and 99: Lines 6–9].

Allianz concluded that Impero's claim consisted solely of the cost of making good faulty or defective workmanship, material, construction or design, which cost is excluded from coverage under the insurance contract at issue [Complaint, paragraph 5]. Allianz declined coverage and commenced this action for declaratory relief.