LAQUILA CONSTRUCTION, INC. and Pinnacle Concrete Corp., Joint Venture, Plaintiff,

v.

TRAVELERS INDEMNITY COMPANY OF ILLINOIS, Defendant.

No. 98 Civ. 5920(HB).

United States District Court, S.D. New York.

Sept. 23, 1999.

Tony Berman, Berman, Paley, Goldstein & Kannry, L.L.P., New York City, for plaintiff.

Christopher S. Finazzo, Budd Larner Gross Rosenbaum Greenberg & Sade, New York City, for defendant.

### MEMORANDUM & ORDER

BAER, District Judge.

The plaintiff, Laquila Construction, Inc. and Pinnacle Concrete Corp. ("Laquila"), a joint venture, commenced this suit on August 19, 1998 seeking a declaration of coverage under an insurance policy issued by the defendant, Travelers Indemnity Company of Illinois ("Travelers"). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the defendant now moves for summary judgment. For the reasons stated below, the defendant's motion is GRANTED.

## I. BACKGROUND

Laquila had a contract with HRH Construction Corporation ("HRH") to provide concrete for the construction of a new building on the Upper West Side of Manhattan. The contract had particular specifications that required Laquila to use concrete having a certain minimum strength. On August 15, 1997, employees for Laquila began installing the concrete in the fifth floor structural "slab." Soon after it was discovered that the strength of the concrete was below specification, and HRH promptly issued an order directing Laquila to stop pouring the unacceptable concrete. Tests done on the concrete seven and twenty-eight days later confirmed that the concrete was indeed below specification. On October 15, 1997, further testing showed that some sections of concrete were much lower in strength than originally anticipated. Just a few days later, the City of New York issued a notice of violation that temporarily halted the entire construction site.

The defective concrete was later replaced with materials that met the requisite specifications. This replacement involved "shoring" or reinforcing the building while the corrective work on the fifth floor took place. Additionally,

other subcontractors were required to remove—and later re-install—work on the fifth floor, such as heating, ventilating and air conditioning ductwork, electrical fixtures, and plumbing units.

At all relevant times to this litigation, the plaintiff was covered by a Builder's Risk insurance policy issued by Travelers. This policy insured Laquila against the risk of "physical loss or damage to the property insured, except as excluded hereunder." The "Exclusions and Limitations" on coverage were contained in Part B of the policy, which provided as follows:

THIS POLICY SHALL NOT PAY FOR:

1. PERILS EXCLUDED

(a) Any loss of use or occupancy or consequential loss of any nature howsoever caused, including penalties for non-completion or delay in completion of or delay in completion of contract or non-compliance with contract conditions;

(b) Cost of making good faulty or defective workmanship or material, but this exclusion shall not apply to physical damage resulting from such faulty or defective workmanship or material.

On October 31, 1997, Travelers received from the plaintiff notice of the loss and a request for coverage for "the costs of repairing the fifth floor slab under an approved corrective plan." (Pl.'s Mem. Opp. Summ. J. at 8.) These costs included not only removing and replacing the defective concrete slab at issue, but also the costs of "shoring the full height of the building while corrective work on the fifth floor took place" and other trade contractors' having to remove and reinstall their work. (Id.)

Travelers later denied coverage on the basis that the claim was for the "cost of making good faulty or defective workmanship or material," which was excluded by the policy. The defendant also declined coverage for any alleged consequential

losses, including delays and charge-backs to the plaintiff arising from time delays. On August 19, 1998, Laquila commenced this diversity action, seeking a declaratory judgment that its claim is covered by the defendant's insurance policy.

## II. *DISCUSSION*

Summary judgment is properly granted only when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law. Fed.R .Civ.P. 56(c). The substantive law determines what facts are material to the determination. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In assessing the record before the court, the "non-movant will have his allegations taken as true," *Distasio v. Perkin Elmer Corporation,* 157 F.3d 55, 61 (2d Cir.1998), but he or she may not oppose summary judgment merely by offering conclusory allegations or denials. *See Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir.1997).

■ Although there is some disagreement as to exactly whether Laquila knew about the defective concrete at the time it was poured, this factual dispute is immaterial. Both parties concede that the concrete was defective and had to be removed. The sole remaining issue then is one of contract interpretation—whether the defendant's policy covers the plaintiff's claim. On this score, both parties agree that the exclusion clause of paragraph 1(b) of the policy is pivotal, and it reads in pertinent part that the "[c]ost of making good faulty or defective workmanship or material" is *not* covered by Travelers' policy. Laquila contends, however, that the second clause of 1(b), the exception to the exclusion, is applicable here and that the policy covers the claim. The exception, also known as an "ensuing loss provision," reads in pertinent part: "[T]his exclusion shall not apply to physical damage resulting from such faulty or defective workmanship or material." The plaintiff contends that "the installation of concrete that proved to be defective ... *physically damaged* the insured property (the structural slab and/or the building as a whole) because it was *physically incorporated* into the larger entity and could only be removed at a cost." (Pl.'s Mem. Opp. Summ J. at 16 (emphasis added).) I disagree.

The plaintiff argues that the policy terms are to be "taken and understood in their plain, ordinary and proper sense" and that the Court should ask "whether the average man in applying for insurance and reading the language of this policy ... would ascribe the meaning to that language which the insurance company here urges." *Hartol Products Corporation v. Prudential Insurance Co. of America,* 290 N.Y. 44, 47, 49–50, 47 N.E.2d 687 (1943). Finally, the plaintiff contends that the burden is on the defendant to establish that the insurer's construction "is the only construction that can fairly be placed" on the policy at issue. *Id.* Applying these standards to the terms of the policy in the case at bar, it becomes clear that there is indeed only one reasonable interpretation of the terms at issue here—that the plaintiff's claim falls squarely into the exclusion clause simply as a cost incurred to make good the defective concrete.

■ Initially, I note that the exception to an exclusion should not be read so broadly that the rule—the exclusion clause—is swallowed by the exception— here, the exception for ensuing loss. *Narob Development Corp. v. Insurance Company of North America,* 219 A.D.2d 454, 631 N.Y.S.2d 155–156 (1st Dep't 1995) ("Where a property insurance policy contains an exclusion with an exception for ensuing loss, courts have sought to assure that the exception does not supersede the exclusion by disallowing coverage for ensuing loss directly related to the original excluded risk."), *leave to appeal denied,* 87 N.Y.2d 804, 640 N.Y.S.2d 877, 663 N.E.2d 919 (1995). Moreover, although not bind-

ing, I find persuasive a case nearly on all fours with the case at bar. In *Allianz Insurance Company v. Impero*, 654 F.Supp. 16 (E.D.Wash.1986), the court considered an insured's claim for coverage under a builder's risk policy with terms nearly identical to those used in this policy.[1] There the insured had constructed a concrete wall which, when completed, contained deficiencies that required expensive repairs. The defendant sought coverage for the costs of these repairs, arguing that the defective concrete in the wall constituted "damage resulting" within the terms of the policy. On summary judgment, the court rejected the insured's "strained construction" of the exclusion and ensuing loss clauses:

> The defective concrete caused no damage to any other portion of the structure, other persons or property. The sole claim is for the cost of correcting the deficiencies in the wall. *Had the wall, as a result of the deficiencies in the concrete, collapsed and caused damage to some other portion of the work, or to equipment of a subcontractor or some similar thing, we would have a different case.*

*Id.* at 18 (emphasis added). *See also Narob*, 631 N.Y.S.2d at 155–6 ("Here, inasmuch as there was no collateral or subsequent damage or loss as a result of the collapse of the free-standing retaining wall, the exception should not have been at issue.").

Similarly, had the fifth floor slab in HRH's building collapsed and damaged machinery, plumbing and electrical fixtures, or even neighboring property, such losses—wholly separate from the defective materials themselves—would qualify as non-excluded "ensuing losses" under Travelers' policy. Instead, Laquila's claim for coverage here is no more than an attempt to recover for the excluded costs of making good its faulty or defective workmanship. The plaintiff essentially concedes this point.[2]

■ While the plaintiff's "incorporation" theory is creative, it cannot withstand inspection. Were I to accept the plaintiff's interpretation, it would result in coverage for nearly *every* instance of defective workmanship—be it the installation of cracked pipes, faulty electrical wiring, or a defective ventilation system—whether or not there was *any* actual ensuing loss or if such loss stemmed directly from a risk expressly and unquestionably excluded by the policy. Such coverage would wrongfully insulate contractors from liability when their negligent or shoddy workmanship results in structural or other failings.

Not to be deterred, the plaintiff relies heavily on *Maryland Casualty Company v. W.R. Grace and Company*, 23 F.3d 617 (2d Cir.1993), and *Eljer Manufacturing, Inc. v. Liberty Mutual Insurance Company*, 972 F.2d 805 (7th Cir.1992), for the proposition that the incorporation of a de-

---

1. The builder's risk policy in *Allianz* provided coverage against "all risks of physical loss of or damage to ... property in the course of construction." 654 F.Supp. at 17. The exclusion and ensuing risk clause there stated:

   This policy does not cover

   ....

   (c) Cost of making good faulty or defective workmanship, material, construction or design, but this exclusion shall not apply to the damage resulting from such faulty or defective workmanship, material, construction or design....

   *Id.*

2. In its complaint, for example, Laquila alleges that as a result of the defective concrete, "Laquila/Pinnacle performed owner-required remediation to make good the faulty material, *i.e.* the concrete." (Complaint ("Compl.") ¶ 24.) In so doing, "Travelers' representatives monitored Laquila/Pinnacle's making good of the defective material." (Compl.¶ 25.) Similarly, the plaintiff contends that it "has incurred costs and expenses in an amount of no less than three million ... dollars *as the result of making good the defective concrete* that physically damaged the fifth floor reinforced structural concrete slab." (Compl. ¶ 26 (emphasis added).) Finally, the complaint states that "Travelers is liable under the Policy for the costs incurred by Laquila/Pinnacle in making good such defective material." (Compl.¶ 28.)

fective product into another inflicts "property damage" onto the latter. These cases, however, are inapposite for several reasons. In *Maryland Casualty*, 23 F.3d at 627, while the Circuit may have recognized the "incorporation" theory of damage, the court there also found that the *mere presence* of asbestos constituted the "injury" to property and accordingly and expressly limited its holding to cases involving asbestos. *Id.* at 628 ("Consequently, we hold that damage-in-fact occurs to property at the time asbestos products are installed, and injury to property does not continue after that event.") Moreover, property damage was broadly defined by the insurance policy in that case as "injury to or destruction of property, including the loss of use thereof," and the court specifically noted that "[u]nder this definition, the injury to property need not be a physical injury." *Id.* at 626. In the case at bar, however, such damage was specifically defined—with emphasis added—to mean "*physical* injury to or *destruction* of insured property during the policy term," and fails to hint that injury could be met by mere loss of use. In *Eljer Manufacturing*, 972 F.2d at 806–807, the Seventh Circuit applied New York law to a standard form Comprehensive General Liability Insurance Policy—unlike the Builder's Risk Policy at issue here. The court there relied on "the drafting history of the property-damage clause" in the policy when it recognized that the incorporation of a defective product into another may inflict physical injury on the latter. *Id.* at 814. As part of that "drafting history," the definition of "property damage" had been specifically amended to include "loss of use of tangible property *which has not been physically injured or destroyed* provided such loss of use is caused by an occurrence ... during the policy period." *Id.* at 807 (emphasis added).

### III. *CONCLUSION*

For the reasons stated above, the defendant's motion is hereby GRANTED, the plaintiff's complaint is dismissed with prejudice. The Clerk of the Court is directed to close this case.

**SO ORDERED.**