[No. 18306-8-III. Division Three. January 25, 2000.]

BETHANY BOWERS, *Appellant*, v. FARMERS INSURANCE EXCHANGE, *Respondent*.

*Martin Gales* of *Montgomery, Carroll & Gales*, for appellant.

*Mark S. Cole* and *Gregory D. Zamudio*, for respondent.

KURTZ, C.J. — Bethany Bowers was denied coverage by Farmers Insurance Exchange (Farmers) for mold damage to a rental house which occurred when her tenants, without the knowledge of Ms. Bowers, converted the house into a marijuana grow operation. The marijuana cultivation caused damage to the house, including mold growth throughout the house. Upon cross-motions for summary judgment, the court held in favor of Farmers. Ms. Bowers appeals contending the court erred in holding that the insurance did not cover the mold damage caused by the marijuana grow operation, and in not awarding her reasonable attorney fees.

We conclude the tenants' acts constitute vandalism, for which there is coverage under Ms. Bowers' landlord's insurance policy. We further conclude that the tenants' acts are the efficient proximate cause of Ms. Bowers' loss. The

judgment of the superior court is reversed. Ms. Bowers is awarded her attorney fees.

## FACTS

On November 1, 1997, Bethany Bowers rented her single family house to new tenants. Prior to being rented, the house had been well-maintained, without problems of mold or excess water vapor condensation. A Landlord's Protection Package insurance policy was issued by Farmers to Ms. Bowers and was in effect from November 1, 1997, to June 6, 1998.

The tenants converted a basement portion of the house into a hothouse for growing marijuana. Halide lights were used, the basement windows were covered, foil was put on the walls, and the marijuana grow operation was vented directly into the chimney. The house was otherwise sealed. All heat in the house was diverted to the basement grow operation room.

The lack of heat throughout the house, together with excessive water condensation from the halide lights and marijuana grow operation, caused mold to grow rapidly throughout the house. There were deposits of mold on floors, carpets, walls, paneling, doors, window coverings, insulation, rafters, joints and other surface areas in the house.

Initially, Ms. Bowers was unaware of the marijuana grow operation. However, after almost three months, she became suspicious and contacted the Spokane police. The marijuana grow operation was discovered and removed by the Spokane police.

Ms. Bowers thereafter submitted an insurance claim to Farmers for (1) replacement of warped paneling in the basement, and (2) an additional $14,802.90 for cleanup of mold damage. Farmers paid for the warped wall paneling, but denied the claim for mold-related damage as not being covered under the policy. Ms. Bowers filed an action against Farmers for the repair costs and lost rent. Upon cross-

motions for summary judgment, the trial court held in favor of Farmers. Ms. Bowers appeals.

## ANALYSIS

 An insurer is liable under a contract for insurance when a covered peril causes a loss. The court must first determine the scope of the policy's coverage. *Graham v. Public Employees Mut. Ins. Co.*, 98 Wn.2d 533, 540, 656 P.2d 1077 (1983) (Brachtenbach, J., dissenting). The court determines coverage by characterizing the perils contributing to the loss, and determining which perils the policy covers and which it excludes. *Kish v. Insurance Co. of N. Am.*, 125 Wn.2d 164, 170, 883 P.2d 308 (1994). Interpretation of insurance policy language is a matter of law that we review de novo. *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 730-31, 837 P.2d 1000 (1992).

The Farmers' policy's exclusion section states in relevant part:

We do *not* cover direct or indirect loss from:

. . . .

4. *Vandalism or Malicious Mischief*, breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days just before the loss. A dwelling under construction is not considered vacant.

. . . .

6. *Wear and tear*; marring; deterioration; inherent vice; latent defect; mechanical breakdown; rust; *mold*; wet or dry rot; contamination; smog; smoke from farm smudging or industrial operations; settling, cracking, shrinking, bulging or expansion of pavements, patios, foundation, walls, floors, roofs or ceiling; birds, vermin, rodents, insects or domestic animals. If any of these cause water to suddenly and accidentally escape from a plumbing, heating, air conditioning system or household appliance, we cover loss caused by water. We also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance not otherwise excluded under

item 5 above. We do *not* cover loss to the system or appliance from which the water escaped.

(Emphasis added.)

Ms. Bowers contends the purpose of the Farmers' policy was to insure her as landlord from accidental loss to the insured rental property. She emphasizes that there is no dispute that the loss was "accidental" insofar as she was concerned. She argues there should be coverage for this loss under the coverage for vandalism or malicious mischief because the tenants willfully, wantonly and recklessly damaged her property.

In response, Farmers argues the cause of Ms. Bowers' loss is mold, not vandalism or malicious mischief. In plain language, the policy excludes loss due to mold. Farmers maintains there is no ambiguity or provision in conflict with the exclusion. Farmers asks this court to enforce the exclusion.

█ The Farmers' policy specifically covers loss caused by vandalism or malicious mischief, but does not define those terms. "Courts interpret insurance contracts as an average insurance purchaser would understand them and give undefined terms in these contracts their 'plain, ordinary, and popular' meaning." *Kish*, 125 Wn.2d at 170 (quoting *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507, 87 A.L.R.4TH 405 (1990)); *accord State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 480, 687 P.2d 1139 (1984).

"Vandalism" is defined as "willful or malicious destruction or defacement of things of beauty or of public or private property." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2532 (1993). "Malicious mischief" is defined as "willful, wanton, or reckless damage or destruction of another's property." WEBSTER'S, *supra*, at 1367. A person who acts willfully acts knowingly. RCW 9A.08.010(4). The criminal statutes require that "malicious mischief" be done "knowingly and maliciously." RCW 9A.48.070, .080, .090.

█ Farmers argues that the tenants' conduct was not

vandalism or malicious mischief because the conduct was not malicious. Farmers emphasizes that the tenants' conduct was not motivated by any ill will or malice towards the owner. In this context, malice does not require ill will, hatred, or vindictiveness of purpose. Malice may be inferred from the act of destruction. It is sufficient if the actor is guilty of wanton or intentional disregard of the rights of others. 13A GEORGE J. COUCH, COUCH ON INSURANCE 2D § 48:210 (Mark S. Rhodes ed., rev. ed. (1982)); Michael A. Sabatino, Annotation, *What Constitutes "Vandalism" or "Malicious Mischief" Within Meaning of Insurance Policy Specifically Extending Coverage to Losses from Such Causes*, 56 A.L.R.5TH 407 (1998). As stated in *Frontier Lanes v. Canadian Indem. Co.*, 26 Wn. App. 342, 613 P.2d 166 (1980), "[p]roperty has been damaged 'willfully and maliciously' if the damage results from an intentional act from which damage was reasonably expected to result." *Id.* at 347.

This is illustrated in *Livaditis v. American Cas. Co.*, 117 Ga. App. 297, 160 S.E.2d 449 (1968), in which a tenant operated a moonshine still in a rental house. The moonshine operation was vented so that the smoke, fumes and vapor were pulled by a fan to the interior of the house. As a result of smoke and condensation, the paint in the rooms peeled, plaster was loosened, and rugs, drapes, and walls were stained, soiled and covered with mold. The issue before the court was whether the tenant's acts were vandalism, for which there was coverage. In concluding that the tenant's acts were vandalism, the court rejected the insurance company's contention that the owner was required to show that the tenant acted with specific intent to injure the property and was motivated by actual malice. *Id.* at 451.

In this case, the tenants diverted all of the heat from the furnace to the basement in order to create a marijuana grow room. They irrigated the marijuana plants under grow lights. This created a sauna-like environment in the basement. Additionally, they sealed the house and thereby trapped the water vapor generated by their activities in the

basement. These activities caused certain damage to Ms. Bowers' house. The tenants acted in conscious or intentional disregard for her property rights. Malice may be inferred from their acts. We conclude that the tenants' acts are vandalism.

Ms. Bowers argues that the "efficient proximate cause" of her loss was not the mold, but the vandalism of her tenants. The question is whether the tenants' acts, the covered peril, or the mold, the excluded peril, are the proximate cause of Ms. Bowers' loss.

In *Graham*, the court addresses the issue of whether an all-risk insurance policy covers a loss caused by two or more perils when one of the perils is excluded and the other peril is covered. *Graham* held that where an insured peril "sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produce the result for which recovery is sought" that peril is the "proximate cause" of the loss. *Graham*, 98 Wn.2d at 538. The proximate cause is "the efficient or predominant cause," not necessarily the last act in a chain of events leading to the damage. *Id.* When the insured can identify an insured peril as the proximate cause, there is coverage "even if subsequent events in the causal chain are specifically excluded from coverage." *Findlay v. United Pac. Ins. Co.*, 78 Wn. App. 17, 20, 895 P.2d 32 (1995), *aff'd*, 129 Wn.2d 368, 917 P.2d 116 (1996).

In *Sunbreaker Condominium Ass'n v. Travelers Insurance Co.*, 79 Wn. App. 368, 901 P.2d 1079 (1995), the court applied the efficient proximate cause rule to find that where wind-driven rain was a distinct, covered peril under the policy, the policy's fungus damage exclusion did not necessarily bar recovery for fungus damage. Even though expert testimony identified rain as the cause of fungus, a jury could find that wind-driven rain was the efficient proximate cause of the loss. Similarly, Ms. Bowers recognizes that mold growth was the immediate cause of her loss but argues that her tenants' vandalism was the efficient proximate cause of the loss.

■ If the efficient proximate cause rule applies, the question of which peril constitutes the proximate cause is usually referred to the fact finder unless the facts are undisputed and there can be no reasonable difference of opinion regarding their meaning. In the latter case, the issue of proximate cause may be a question of law for the court. *Kish*, 125 Wn.2d at 170. Here, there can be no reasonable difference of opinion regarding the cause of Ms. Bowers' loss. It was the tenants' acts, which "in an unbroken sequence . . . [produced] the result for which recovery is sought[.]" *Graham*, 98 Wn.2d at 538. We conclude that the tenants' acts are the efficient proximate cause of the owner's loss.

The judgment of the superior court is reversed. Ms. Bowers is awarded her reasonable attorney fees in superior court and on appeal. *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 51-54, 811 P.2d 673 (1991). On remand, the trial court shall enter an order of partial summary judgment in favor of Bethany Bowers on the issue of coverage, and shall make an award of reasonable attorney fees pertaining to the issue of coverage. The matter is remanded for further proceedings consistent with this opinion.

SCHULTHEIS and BROWN, JJ., concur.

Reconsideration granted and opinion modified March 7, 2000.