241 P.3d 429 (2010)
VISION ONE, LLC; and Vision Tacoma, Inc., Respondents/Cross Appellants,
v.
PHILADELPHIA INDEMNITY INSURANCE COMPANY, Respondent/Cross Appellant and
D & D CONSTRUCTION, INC., Respondent.
D & D Construction, Inc., Respondent,
v.
Berg Equipment & Scaffolding Co., Inc., Respondent.
Matthew Thompson, Respondent,
v.
D & D, Inc., a Washington corporation; Berg Equipment & Scaffolding Co., Inc., a Washington corporation; Vision One, LLC, a Washington limited liability corporation; and Vision Tacoma, Inc., a Washington corporation, Respondents.
RSUI, Appellant/Intervenor.
Nos. 38411-6-II, 41021-4-II.
Court of Appeals of Washington, Division 2.
October 19, 2010.
*431 Michael David Helgren, Barbara Himes Schuknecht, David Andrew Linehan, McNaul Ebel Nawrot & Helgren PLLC, Thomas Dean Adams, Celeste Mountain Monroe, Jose Dino Vasquez, Karr Tuttle Campbell, Seattle, WA, Charles Kenneth Wiggins, Wiggins & Masters PLLC, Bainbridge Island, WA, for Appellants.
Randy Jarl Aliment, Daniel W. Ferm, Williams Kastner & Gibbs, Jerry Bruce Edmonds, Douglas A. Hofmann, Teena M. Killian, Attorney at Law, Tracy A. Duany, Daniel F. Mullin, Mullin Law Group PLLC, Seattle, WA, Timothy Lee Ashcraft, Williams Kastner & Gibbs, D. Michael Shipley, Peter Thomas Petrich, Attorney at Law, Tacoma, WA, Dennis J. Perkins, Attorney at Law, Bellevue, WA, for Respondents.
ARMSTRONG, P.J.
¶ 1 Shoring equipment supporting a poured concrete slab collapsed during the construction of a condominium complex being developed by Vision One LLC and Vision Tacoma Inc. (collectively Vision). Philadelphia Indemnity Insurance Co., Vision's insurance company, denied Vision's insurance claim and Vision sued Philadelphia for breach of contract, bad faith, and violations of the Consumer Protection Act (CPA). The trial court ruled that the concrete slab collapse was covered under the "resulting loss" exception to the policy's faulty workmanship exclusion. A jury found that Philadelphia acted in bad faith and committed five CPA violations.
¶ 2 Vision also sued D & D Construction Inc., the contractor responsible for the concrete work, and D & D sued Berg Equipment and Scaffolding Co., the contractor responsible for supplying the shoring equipment. Vision settled with D & D and Berg and the settlement released Berg from liability. Philadelphia moved to dismiss Vision's breach of contract claim, contending that Vision breached the insurance contract by impairing Philadelphia's recovery rights against Berg. The trial court denied Philadelphia's motion.
¶ 3 Philadelphia appeals (1) the trial court's denial of its motion to dismiss Vision's breach of contract claim, (2) the trial court's ruling that the concrete slab collapse is covered as a resulting loss, and (3) the measure of damages and attorney fees. Vision cross-appeals, also assigning error to the measure of damages. Because material facts regarding the cause of the collapse remain in dispute, we reverse the judgment against Philadelphia and remand for a jury to determine causation. We also hold as a matter of law that the concrete slab collapse is not a resulting loss under the faulty workmanship resulting loss provision.

FACTS

I. Collapse and Insurance Claim
¶ 4 In 2005, Vision began developing a condominium complex in Tacoma. Vision contracted with D & D for the concrete work and D & D contracted with Berg for shoring equipment to temporarily support the poured concrete slabs. On October 1, 2005, D & D poured a concrete slab and the shoring structure collapsed. After receiving Vision's insurance claim, Philadelphia hired BT & Associates to determine the cause of the collapse.
¶ 5 A structural engineer examined the shoring design drawings and concluded that the design was adequate for supporting the poured concrete but that "at best, this shoring design is marginal and it doesn't allow for any inadequacies in the shoring installation." Clerk's Papers (CP) at 6110, 6112. BT & Associates also inspected the shoring equipment and identified numerous flaws with the shoring installation, including: missing cross-braces, overextended tubes, tilting shoring towers, and inadequately supported base plates placed on unlevel surfaces. The report concluded:
The marginal shoring design alone may not have caused the ... collapse.... We suggest that this factor in combination with various shoring installation problems identified in this report, on a more likely than not basis, caused the shoring to collapse....
CP at 6118.
¶ 6 Vision's insurance policy covers all "direct physical `loss,'" unless the loss is *432 expressly excluded. CP at 5973-74. The policy expressly excludes loss caused by defective design and loss caused by faulty workmanship. But the faulty workmanship exclusion provides coverage for resulting losses: "[If] loss by any of the Covered Causes of Loss results, we will pay for that resulting `loss.'" CP at 5978.
¶ 7 Based on these exclusions and the report from BT & Associates, Philadelphia denied Vision's claim in a letter dated January 3, 2006:
The damage to the construction project was a sole and direct result of the marginal shoring design and faulty installation of the shoring. The policy excludes loss caused by deficiency in design and loss caused by faulty workmanship. Coverage will exist for any resulting loss caused by another insured event or peril. In this instance, the only peril, which caused the loss, was defective design and faulty workmanship, therefore there is no coverage for Vision One's claims. To the extent any portion of the claim can be considered a resulting loss, other policy exclusions and limitations apply.
CP at 13,136. Vision asked Philadelphia to reconsider, and Philadelphia clarified its evaluation in a letter dated January 27, 2006:
While the faulty workmanship exclusion contains an exception for resulting loss from a Covered Cause of Loss, in [this] case, the only cause of the loss was defective design and faulty workmanship. There is no separate and independent loss that resulted in the claimed damage. Therefore, the faulty workmanship exclusion bars coverage for this loss, and the "resulting loss" provision contained therein does not apply.
CP at 13,139 (emphasis omitted).

II. Litigation Between Vision and Philadelphia
¶ 8 In March 2006, Vision sued Philadelphia in Pierce County Superior Court. In pretrial hearings regarding proposed jury instructions, the parties disagreed over the meaning of several policy provisions. The parties asked the trial court to interpret the disputed provisions as a matter of law and submitted extensive briefing on the issues.
¶ 9 Vision argued that if there were two excluded causes of loss, then the collapse would be covered because neither "directly and solely" caused the collapse. CP at 6,388-91. In response, Philadelphia argued:
The significance of the "directly and solely" language is not to preclude Philadelphia from denying coverage if two or more excluded events occur. It is to preclude Philadelphia from denying coverage if an excluded event and a[ ] non-excluded event result in loss or damage.
CP at 6,492. At a hearing on this issue, Philadelphia clarified that an additional efficient proximate cause analysis is required if the loss was caused by an excluded event and a nonexcluded event. Relying on the language in Philadelphia's brief, the trial court ruled:
Order on Insurance-Related Issues:
If it is found that the loss was caused by one or more non-excluded event(s) in combination with one or more excluded event(s); the loss is covered.
Report of Proceedings (RP) (July 18, 2008) at 18; CP at 6,587. Philadelphia moved for reconsideration, asking the trial court to amend its ruling to state: "If there are two or more causes of loss, the policy provides coverage if the efficient proximate cause of the loss is a covered cause of loss." CP at 6,603-06. The trial court denied the motion.
¶ 10 The parties also disagreed over whether the concrete collapse qualified as a "resulting loss" under the faulty workmanship resulting loss provision. CP at 6,960-7,009. The trial court ruled that because the shoring equipment and concrete slab were "separate and distinct," the concrete collapse was covered under the resulting loss provision:
Order on Resulting Loss:
As a matter of law, for purposes of the faulty workmanship resulting loss clause in the contract between Vision One and Philadelphia, the shoring equipment is separate and distinct from the concrete, rebar, and wood forms. Thus, any resulting loss or *433 damage caused by the concrete collapse is covered by the policy language.
CP at 7,099-7,100.
¶ 11 Philadelphia again moved for reconsideration, arguing that a jury must determine the efficient proximate cause of the collapse before the trial court can rule that the loss is covered under the faulty workmanship resulting loss provision. The trial court denied the motion, stating: "We've been over whether there needs to be one cause or two, or multiple causes. If there is a cause that should be covered, then it's all going to be covered." RP (Sept. 16, 2008) at 19. The trial court then ruled:
Order on Faulty Workmanship:
Philadelphia is precluded, by its prior position taken, from arguing at trial that faulty workmanship was not a cause of the collapse. Because the Court has already ruled that any resulting loss or damage caused by the concrete collapse is covered by the policy language, the only issues remaining for trial are: (1) causation; (2) bad faith; and (3) damages.
CP at 7,102-03.
¶ 12 A jury found that the concrete collapse caused $251,023 in repair and reconstruction expenses and $724,605 in expenses due to delay. The jury also found that Philadelphia acted in bad faith and committed five CPA violations, causing $178,728 in damages. The trial court awarded Vision a principal judgment of $1,148,428, an additional $50,000 for the five CPA violations, and $1,997,818 for attorney fees and costs.

III. Settlement Between Vision and Berg
¶ 13 Before trial, Vision settled with D & D and Berg. The settlement included a judgment against Berg that Vision agreed to attempt to satisfy only against Berg's excess insurer, Royal Specialty Underwriting, Inc. (RSUI).[1] The settlement also released Berg from liability. Philadelphia moved to dismiss Vision's breach of contract claims, arguing that the settlement breached the insurance contract by impairing Philadelphia's potential recovery rights against Berg. The trial court approved the settlement and denied Philadelphia's motion, ruling:
Philadelphia Insurance having denied coverage and having paid nothing [to Vision] is not entitled to any subrogation or other interest in this settlement [between Vision and Berg]. If Philadelphia prevails on coverage, it is not prejudiced by this settlement. If Philadelphia does not prevail, it is in material breach of its insuring obligations and is not entitled to subrogation in light of such breach.
CP at 484.

ANALYSIS

I. Impairment of Recovery Rights
¶ 14 Philadelphia first contends that the trial court should have dismissed Vision's breach of contract claim, arguing that Vision clearly breached the insurance policy by settling with Berg, thereby impairing Philadelphia's recovery rights against Berg. The insurance policy provides: "If by any act or agreement after a `loss' you impair our right to recover from others liable for the `loss', we will not pay you for that `loss.'" CP at 5,979. We review the trial court's interpretation of insurance policy provisions de novo. Bowers v. Farmers Ins. Exch., 99 Wash.App. 41, 44, 991 P.2d 734 (2000) (citing McDonald v. State Farm Fire & Cas. Co., 119 Wash.2d 724, 730-31, 837 P.2d 1000 (1992)).
¶ 15 The issue is whether Philadelphia may enforce the policy's impairment of recovery rights provision against Vision after denying Vision's claim. The parties have not cited any Washington cases addressing this issue. But many other jurisdictions have considered this issue and agree that when an insurer denies liability and the insured settles with the tortfeasor, the insurer is estopped from claiming that the insured breached the policy by impairing the insurer's recovery rights. See, e.g., Havanich v. Safeco Ins. Co. of Am., 557 F.2d 948, 950-52 (2d Cir.1977); Stephens v. State Farm Mut. Auto. Ins. Co., 508 F.2d *434 1363, 1366 (5th Cir.1975), abrogated on other grounds by Holyfield v. Members Mut. Ins. Co., 572 S.W.2d 672 (Tex.1978); Calhoun v. State Farm Mut. Auto. Ins. Co., 254 Cal. App.2d 407, 62 Cal.Rptr. 177, 179-81 (1967); Liberty Mut. Ins. Co. v. Flitman, 234 So.2d 390, 392-93 (Fla.Dist.Ct.App.1970); Cmty. Title Co. v. Safeco Ins. Co. of Am., 795 S.W.2d 453, 461-62 (Mo.Ct.App.1990); Schwickert, Inc. v. Winnebago Seniors, Ltd., 680 N.W.2d 79, 84 (Minn.2004); Sexton v. Cont'l Cas. Co., 816 P.2d 1135, 1138 (Okla. 1991); Roberts v. Fireman's Ins. Co. of Newark, 376 Pa. 99, 101 A.2d 747, 749-50 (1954); Childs v. Allstate Ins. Co., 237 S.C. 455, 117 S.E.2d 867, 871 (1961); see generally 16 Lee R. Russ, Couch on Insurance § 224:148 (3d. ed.2005). As the Fifth Circuit explained in Stephens v. State Farm Mutual Auto Insurance Co.:
The rationale behind holding to this particular waiver theory is that a claimant should not be required to approach his insurer, hat in hand, and request consent to settle with another when he has already been told, in essence, that the insurer is not concerned, and he is to go his way. It is difficult to see why an insurer should be allowed, on the one hand, to deny liability and thus, in the eyes of the insured, breach his contract and, at the same time, on the other hand, be allowed to insist that the insured honor all his contractual commitments. When the denied liability does not, in fact, exist, no harm can be done the insurer by the insured's settlement with a third party. When the denied liability does exist (as may be later adjudicated), admittedly the subrogation rights of the insurer could be compromised by settlement. However ... the denial is a breach of contract on the part of the insurer and its breach should, by rights, relieve the insured of the punitive effects of his failure to comply with consent provisions of the insurance policy.
Stephens, 508 F.2d at 1366.
¶ 16 Philadelphia argues that we should enforce the policy's impairment of recovery rights provision despite the wealth of persuasive authority to the contrary, relying on Leader National Insurance Co. v. Torres, 113 Wash.2d 366, 779 P.2d 722 (1989), and Kalamazoo Acquisitions, LLC v. Westfield Insurance Co., 395 F.3d 338 (6th Cir.2005). Both Leader and Kalamazoo are distinguishable from this case.
¶ 17 In Leader, our Supreme Court held that a settlement between an insured and a tortfeasor does not extinguish the insurer's subrogation rights where (1) the tortfeasor knows of the insurer's payment and right of subrogation, (2) the insurer does not consent, and (3) the settlement does not exhaust the tortfeasor's assets. Leader, 113 Wash.2d at 373-74, 779 P.2d 722 (emphasis added). Philadelphia acknowledges the key distinction between Leader and this casePhiladelphia denied Vision's claim and has never made a payment to Vision. Thus, the first Leader requirement has not been met.
¶ 18 In Kalamazoo, the insured first settled with the tortfeasor for less than the amount of actual damages and then submitted a claim to the insurer for the remaining balance. Kalamazoo, 395 F.3d at 340. The Fifth Circuit held that the insured had breached the policy's subrogation clause and was therefore precluded from demanding that the insurer pay the balance. Kalamazoo, 395 F.3d at 344-45. Thus, the insured in Kalamazoo breached the contract first by extinguishing the insurer's recovery rights before submitting an insurance claim. Here, Vision submitted a claim to Philadelphia and settled with Berg only after Philadelphia denied the claim. As explained in Stephens, if the denied liability does exist, then Philadelphia breached the contract first by denying Vision's claim. If the denied liability does not exist, then Philadelphia has not been harmed by Vision's settlement. See Stephens, 508 F.2d at 1366.
¶ 19 Accordingly, we affirm the trial court's denial of Philadelphia's motion to dismiss Vision's breach of contract claim. Based on the persuasive authority discussed above, Philadelphia is estopped from claiming that it was released from liability when it denied Vision's insurance claim and Vision settled with Berg.

*435 II. Resulting Loss Ruling
¶ 20 Philadelphia next assigns error to the trial court's resulting loss ruling, arguing (1) the trial court erred by finding coverage as a matter of law before a jury determined the efficient proximate cause of the collapse and (2) the concrete slab collapse is not a "resulting loss" under the resulting loss exception to the faulty workmanship exclusion. CP at 5,978.

A. Estoppel

¶ 21 As a threshold matter, Vision argues that an order in limine precludes Philadelphia from arguing that the efficient proximate cause rule applies in this case. The order provides: "Philadelphia is precluded from offering reasons other than those in the first three paragraphs of section 3 Coverage Determinations in the letter dated January 3 and January 27, 2006." CP at 5,723. When an insurer denies coverage for one reason, with knowledge of other reasons for denying coverage, the insurer may be precluded from raising new grounds for denying coverage under traditional principles of estoppel. See Hayden v. Mut. of Enumclaw Ins. Co., 141 Wash.2d 55, 63, 1 P.3d 1167 (2000); Bosko v. Pitts & Still, Inc., 75 Wash.2d 856, 864, 454 P.2d 229 (1969). But, as discussed below, the efficient proximate cause rule is a rule of insurance contract construction, not a new ground for denying coverage. See Sunbreaker Condo. Ass'n v. Travelers Ins. Co., 79 Wash.App. 368, 374-75, 901 P.2d 1079 (1995). Thus, the order in limine does not prevent us from applying the efficient proximate cause rule when interpreting the insurance contract in this case.
¶ 22 Vision also argues that Philadelphia is not entitled to a jury determination of causation because Philadelphia asked the trial court to determine coverage as a matter of law. A party may not maintain inconsistent positions in judicial proceedings. See Mueller v. Garske, 1 Wash.App. 406, 409, 461 P.2d 886 (1969). "It is not as strictly a question of estoppel as it is a rule of procedure based on manifest justice and on a consideration of orderliness, regularity and expedition in litigation." Mueller, 1 Wash. App. at 409, 461 P.2d 886. Here, Philadelphia asked the trial court to interpret the faulty workmanship resulting loss provision and determine whether the concrete slab collapse qualifies as a resulting loss. The scope of a policy's coverage is distinct from the issue of causation. Sunbreaker, 79 Wash. App. at 374, 901 P.2d 1079; see also Churchill v. Factory Mut. Ins. Co., 234 F.Supp.2d 1182, 1187 (W.D.Wash.2002). Parties may ask the trial court to resolve questions of law regarding insurance policy interpretation before the jury resolves questions of fact regarding causation, as Philadelphia did in this case.

B. Efficient Proximate Cause

¶ 23 Turning to the merits of Philadelphia's arguments, we begin with an overview of the principles governing insurance contract interpretation. An insurer is liable under an insurance contract when a covered peril causes a loss. Bowers, 99 Wash.App. at 44, 991 P.2d 734. Under an all-risk insurance policy, any peril that the policy does not specifically exclude is a covered peril. Findlay v. United Pac. Ins. Co., 129 Wash.2d 368, 378, 917 P.2d 116 (1996) (citing Villella v. Pub. Employees Mut. Ins. Co., 106 Wash.2d 806, 816, 725 P.2d 957 (1986)). A court determines coverage by characterizing the perils contributing to the loss and determining which perils the policy covers and which it excludes. Bowers, 99 Wash.App. at 44, 991 P.2d 734 (citing Kish v. Ins. Co. of N. Am., 125 Wash.2d 164, 170, 883 P.2d 308 (1994)). A trial court's interpretation of insurance policy provisions is a matter of law, which we review de novo. Bowers, 99 Wash.App. at 44, 991 P.2d 734 (citing McDonald, 119 Wash.2d at 730-31, 837 P.2d 1000).
¶ 24 Whenever the term "cause" appears in an exclusionary clause, it must be read as "efficient proximate cause." Safeco Ins. Co. of Am. v. Hirschmann, 112 Wash.2d 621, 629, 773 P.2d 413 (1989) (citing Villella, 106 Wash.2d at 815-16, 725 P.2d 957; Graham v. Pub. Employees Mut. Ins. Co., 98 Wash.2d 533, 656 P.2d 1077 (1983)). The efficient proximate cause of a loss is "the predominant cause which sets into motion the chain of events producing the loss ... not necessarily the last act in a chain of *436 events." Graham, 98 Wash.2d at 538, 656 P.2d 1077. Whenever covered and excluded perils combine to cause a loss, the loss will be covered only if the predominant or efficient proximate cause was a covered peril. See Kish, 125 Wash.2d at 170, 883 P.2d 308; McDonald, 119 Wash.2d at 732, 837 P.2d 1000; Graham, 98 Wash.2d at 538, 656 P.2d 1077; Sunbreaker, 79 Wash.App. at 378-79, 901 P.2d 1079. Determining the cause of a loss is a question of fact for the fact finder, unless "the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion." Graham, 98 Wash.2d at 539, 656 P.2d 1077.
¶ 25 Here, the trial court ruled: "If it is found that the loss was caused by one or more non-excluded event(s) in combination with one or more excluded event(s); the loss is covered." CP at 6,587. After determining that the concrete slab collapse qualified as a resulting loss, the trial court relied on this ruling to find coverage as a matter of law, reasoning: "If there is a cause that should be covered, then it's all going to be covered." RP (Sept. 16, 2008) at 19; CP at 7,099-7,100. These rulings contradict the efficient proximate cause rule by allowing coverage as long as at least one of the contributing causes was a covered peril. As discussed above, whenever covered and excluded perils combine to cause a loss, the loss is covered only if the predominant or efficient proximate cause was a covered peril. See Kish, 125 Wash.2d at 170, 883 P.2d 308; McDonald, 119 Wash.2d at 732, 837 P.2d 1000; Graham, 98 Wash.2d at 538, 656 P.2d 1077; Sunbreaker, 79 Wash. App. at 378-79, 901 P.2d 1079.
¶ 26 Furthermore, the resulting loss provision at issue is specifically an exception to the faulty workmanship exclusion. It applies only if faulty workmanship caused the collapse. Thus, when the trial court ruled that the collapse was covered under the resulting loss provision, it essentially ruled that the collapse was caused by faulty workmanship. But determining the cause of the collapse is a question of fact for the jury, unless the facts are undisputed. See Graham, 98 Wash.2d at 539, 656 P.2d 1077.
¶ 27 The parties disputed the cause of the collapse throughout their extensive pretrial briefing: Philadelphia argued that the collapse was caused by faulty workmanship and defective design (two excluded perils), while Vision argued that faulty equipment (a covered peril) also contributed to the collapse.[2] Vision also argued: "[T]here most definitely is a dispute among the parties' experts as to whether faulty workmanship caused the collapse.... It most certainly is not an issue to be ruled on as a matter of law." CP at 6,385. Finally, neither party moved for summary judgment on the issue of causation, as would be appropriate if the material facts were undisputed. See CR 56.
¶ 28 Thus, the cause of the shoring and concrete slab collapse remains in dispute and the parties have consistently argued that multiple perils, some covered and some excluded, caused the collapse. Accordingly, we reverse the trial court's resulting loss ruling and remand for a jury to determine which of the alleged causesfaulty workmanship, defective design, and/or faulty equipmentcaused the collapse. If the jury finds that multiple causes contributed to the collapse, then it must determine which cause was the predominant or efficient proximate cause.

C. Resulting Loss Provision

¶ 29 We next consider whether the concrete slab collapse qualifies as a resulting loss under the faulty workmanship resulting loss provision. The insurance policy states: "We will not pay for `loss' caused by or resulting from ... [f]aulty, inadequate, or defective materials, or workmanship.... But if loss by any of the Covered Causes of Loss results, we will pay for that resulting loss." CP at 5,971, 5,978. The trial court interpreted this provision to mean that loss to property that is separate and distinct from the defective property is covered as a resulting loss:
As a matter of law, for purposes of the faulty workmanship resulting loss clause in *437 the contract between Vision One and Philadelphia, the shoring equipment is separate and distinct from the concrete, rebar and wood forms. Thus, any resulting loss or damage caused by the concrete collapse is covered by the policy language.
CP at 7,099-7,100. We review a trial court's interpretation of insurance policy provisions de novo. Bowers, 99 Wash.App. at 44, 991 P.2d 734 (citing McDonald, 119 Wash.2d at 730-31, 837 P.2d 1000).
¶ 30 A resulting loss or ensuing loss provision is an exception to a policy exclusion. McDonald, 119 Wash.2d at 734, 837 P.2d 1000; Wright v. Safeco Ins. Co. of Am., 124 Wash.App. 263, 274, 109 P.3d 1 (2004). The provision applies when an excluded peril causes a separate and independent covered peril. See Weeks v. Co-Operative Ins. Co., 149 N.H. 174, 817 A.2d 292, 296 (2003) (quoting Acme Galvanizing v. Fireman's Fund Ins., 221 Cal.App.3d 170, 270 Cal.Rptr. 405, 411 (1990)). Damage resulting from the covered peril is then covered under the resulting loss provision, while damage resulting from the initial excluded peril remains uncovered. See Weeks, 817 A.2d at 296 (quoting McDonald, 119 Wash.2d at 734, 837 P.2d 1000).
¶ 31 For example, following the destruction caused by the 1906 San Francisco earthquake, gas-fed fires broke out and caused even more damage across the city. Most property insurance policies excluded earthquake damage but covered fire damage. Because an excluded peril (earthquake) caused an independent covered peril (fire), the resulting fire damage was covered as a "resulting loss." But earthquake damage remained uncovered. See James S. Harrington, Lessons of the San Francisco Earthquake of 1906: Understanding Ensuing Loss in Property Insurance, 37 The Brief 28, 29 (American Bar Association 2008).
¶ 32 Here, assuming faulty workmanship caused the shoring and concrete slab to collapse, faulty workmanship was the initial excluded peril and the collapse was the loss. There was no independent covered peril (such as fire) that caused a covered resulting loss. The collapse resulted directly from the initial excluded peril of faulty workmanship, and loss resulting directly from the initial excluded peril remains uncovered. See McDonald, 119 Wash.2d at 734, 837 P.2d 1000.
¶ 33 In a similar case, Acme Galvanizing Co. v. Fireman's Fund Insurance Co., a defective kettle ruptured, spilling molten zinc and damaging surrounding equipment. Acme Galvanizing, 270 Cal.Rptr. at 407. The insured argued that the damaged equipment was covered under the policy's ensuing loss provision. Acme Galvanizing, 270 Cal. Rptr. at 410-11. But the California Court of Appeals held: "Here, there was no peril separate from and in addition to the initial excluded peril of the welding failure and kettle rupture. The spillage of molten zinc was part of the loss directly caused by such peril, not a new hazard or phenomenon." Acme Galvanizing, 270 Cal.Rptr. at 411. Likewise, if faulty workmanship caused the shoring and concrete slab to collapse, then the collapse was part of the loss caused directly by faulty workmanship. There was no peril "separate from and in addition to the initial excluded peril," and loss caused directly by the initial excluded event is never covered.[3]Acme Galvanizing, 270 Cal.Rptr. at 411; see also McDonald, 119 Wash.2d at 734, 837 P.2d 1000.
¶ 34 Vision contends that the concrete slab collapse is a resulting loss because the defective shoring structure is separate and distinct from the nondefective concrete slab. But Vision relies on a line of cases interpreting a different type of resulting loss provision. See Allianz Ins. Co. v. Impero, 654 F.Supp. 16 (E.D.Wash.1986); Laquila Constr. Inc. v. Travelers Indem. Co. of Illinois, 66 F.Supp.2d 543 (S.D.N.Y.1999); Narob Dev. Corp. v. Ins. Co. of N. Am., 219 A.D.2d 454, 631 N.Y.S.2d 155 (1995).
¶ 35 In Laquila, an insured contractor poured a defective concrete slab floor and *438 sought to recover the cost of replacing the floor. Laquila, 66 F.Supp.2d at 544. The contractor's insurance policy excluded the "[c]ost of making good faulty or defective workmanship or material," but covered "physical damage resulting from such faulty or defective workmanship or material." Laquila, 66 F.Supp.2d at 544. The District Court for the Southern District of New York held:
[H]ad the fifth floor slab ... collapsed and damaged machinery, plumbing and electrical fixtures, or even neighboring property, such losseswholly separate from the defective materials themselveswould qualify as non-excluded "ensuing losses" under [the] policy. Instead, Laquila's claim for coverage here is no more than an attempt to recover for the excluded costs of making good its faulty or defective workmanship.
Laquila, 66 F.Supp.2d at 546.
¶ 36 In Narob, a retaining wall collapsed due to defective workmanship. Narob, 631 N.Y.S.2d at 155. The insured's policy excluded "any loss caused by or resulting from... deficiency in workmanship or materials as respects the cost of making good such ... deficiency," but covered "resulting physical loss caused by or to the Covered Property." Narob, 631 N.Y.S.2d at 155 (emphasis omitted). The Court of Appeals in New York held that the resulting loss exception did not apply in this case because "there was no collateral or subsequent damage or loss as a result of the collapse of the free-standing retaining wall." Narob, 631 N.Y.S.2d at 156.
¶ 37 Finally, in Allianz, an insured contractor installed a defective concrete wall. Allianz, 654 F.Supp. at 17. The policy excluded the "[c]ost of making good faulty or defective workmanship" but provided coverage for "damage resulting from such faulty or defective workmanship." Allianz, 654 F.Supp. at 17. The District Court for the Eastern District of Washington reasoned:
The defective concrete caused no damage to any other portion of the structure, other persons or property. The sole claim is for the cost of correcting the deficiencies in the wall. Had the wall, as a result of the deficiencies in the concrete, collapsed and caused damage to some other portion of the work, or to equipment of a subcontractor or some similar thing, we would have a different case.
Allianz, 654 F.Supp. at 18.
¶ 38 Thus, the policies in these cases exclude the cost of repairing faulty workmanship, but provide coverage for any loss resulting directly from faulty workmanship. See Laquila, 66 F.Supp.2d at 544; Narob, 631 N.Y.S.2d at 155; Allianz, 654 F.Supp. at 17. Therefore, if faulty workmanship directly damages nondefective property, then that damage is covered as a resulting loss. See Laquila, 66 F.Supp.2d at 546; Narob, 631 N.Y.S.2d at 156; Allianz, 654 F.Supp. at 18. In contrast, the policy in this case excludes damage resulting from faulty workmanship, but provides coverage when "loss caused by any of the covered causes of loss results" from faulty workmanship. CP at 5,978 (emphasis added). In other words, this policy covers damage resulting from an independent covered cause, but does not cover damage resulting directly from faulty workmanship. Because Laquila, Narob, and Allianz interpret a different type of resulting loss provision, the reasoning in those cases does not apply here.[4]
¶ 39 In short, the fact that the defective shoring structure allegedly damaged separate, nondefective property does not automatically trigger the resulting loss provision *439 in this case. As discussed above, the resulting loss provision covers damage resulting from an independent covered peril, such as fire. If faulty workmanship in the shoring installation caused the shoring structure and concrete slab to collapse, then the damage resulted directly from faulty workmanship, not from an independent covered peril. Therefore, we hold that the concrete slab collapse does not qualify as a resulting loss under the resulting loss exception to the faulty workmanship exclusion in Vision's insurance contract.
¶ 40 Thus, even if a jury determines that faulty workmanship caused the collapse, the resulting loss exception does not apply. But we still remand to the trial court for a jury to determine causation because Vision has argued that faulty equipment, a covered peril, contributed to the collapse. Thus, the collapse will be covered only if the jury determines that faulty equipment caused the collapse (or, if the jury determines that multiple perils caused the collapse, that faulty equipment was the efficient proximate cause).
¶ 41 Because we reverse and remand for a new jury trial, we do not reach the issues regarding the award of damages and attorney fees.
¶ 42 We reverse the judgment against Philadelphia and remand for a jury to determine causation.
We concur: HUNT and QUINN-BRINTNALL, JJ.
NOTES
[1] RSUI intervened and challenged the reasonableness of the settlement. RSUI appealed the trial court's denial of its motion to continue the reasonableness hearing and the court's ruling that the settlement was reasonable. Their appeal has been severed from this appeal and will be decided in a separate opinion.
[2] The trial court ruled that faulty equipment is a distinct peril from faulty materials and faulty workmanship and, therefore, is not excluded by the policy. Philadelphia does not contest this ruling.
[3] In supplemental briefing, Vision argues that the faulty workmanship in the shoring structure was the initial excluded peril, the collapse of the shoring structure was an independent covered peril, and the damaged concrete slab was a resulting loss. We disagree. If faulty workmanship was the initial excluded peril then the simultaneous collapse of the shoring and concrete slab was the loss. Had the collapse triggered a secondary covered peril, such as a fire, then damage caused by the fire would be covered as a resulting loss.
[4] In supplemental briefing, Vision also relies on Alton Ochsner Medical Foundation v. Allendale Mutual Insurance Co., 219 F.3d 501 (5th Cir. 2000) and Montefiore Medical Center v. American Protection Insurance Co., 226 F.Supp.2d 470 (S.D.N.Y.2002). Those cases are also distinguishable. The court in Alton Ochsner interpreted a resulting loss provision as covering physical damage to separate and distinct property. But the resulting loss provision in that case did not expressly require an independent covered peril, as the provision here does. See Alton Ochsner, 219 F.3d at 504-06. While the court in Montefiore interpreted a resulting loss provision similar to the provision in this case, the court relied on Laquila for the proposition that a resulting loss provision "covers loss caused to other property wholly separate from the defective property itself." Montefiore, 226 F.Supp.2d at 479 (citing Laquila, 66 F.Supp.2d at 545). As discussed above, Laquila interprets a different type of resulting loss provision and the "separate property" test does not apply here.