54 P.3d 1266 (2002)
Harry GRAFF, Respondent,
v.
ALLSTATE INSURANCE COMPANY, Appellant.
No. 28176-7-II.
Court of Appeals of Washington, Division 2.
October 4, 2002.
*1267 Mark Scott Cole, Attorney at Law, Ryan J. Hall, Attorney at Law, Seattle, WA, for Appellant.
Philip I. Brennan, Attorney at Law, Tacoma, WA, for Respondent.
BRIDGEWATER, J.
Allstate Insurance Company appeals the grant of summary judgment and attorney fees in favor of the plaintiff, Harry Graff, an Allstate policyholder, on his breach of contract claim. After a tenant's methamphetamine laboratory damaged his rental house, Graff filed a claim with Allstate for his clean up expenses. Allstate denied Graff's claim, citing the policy's contamination exclusion. We hold that operation of a methamphetamine laboratory is vandalism, a covered event under the policy, and the claim is not barred due to the contamination exclusion. We affirm.
Graff owns a house in the city of Tacoma, which he rented to Steven Miller during the fall of 1999. In November 1999, Tacoma police officers executed search warrants for Miller's vehicles and residence, i.e., Graff's rental house.
Miller's vehicles "contained evidence of the illegal manufacturing of methamphetamine." Clerk's Papers (CP) at 68. The house contained "a quantity of suspected methamphetamine, documents in [Miller's] name ..., drug paraphernalia, a respirator, a chemistry book, and a ... to do list that stated `toluene clean up'." CP at 72. Police officers also found several baggies that field tested positive for methamphetamine. A woman found hiding in the house stated that Miller had manufactured methamphetamine in the attic but moved his lab to another location earlier that day.
Graff went to the house the day after the search; he saw no visible damage from Miller's methamphetamine lab, only doors that the police broke during the search. But the City of Tacoma inspected the house, found it unsanitary because it was used as a methamphetamine lab, and classified it as "derelict." CP at 14-18 (all caps omitted). Consequently, Graff could not rent the house until he remedied the situation.
Graff repaired the house at his own expense. He replaced the carpet, painted, and hired an environmental firm to clean up the methamphetamine residue. In January 2000, the City of Tacoma notified Graff that the repairs were satisfactory. Graff then filed a claim with Allstate for reimbursement of his clean up expenses. Allstate denied the claim, advising Graff that his insurance policy excluded "contamination" as a cause of loss. CP at 30-31, 82.
Graff sued Allstate for breach of contract. On cross-motions for summary judgment, the trial court held in favor of Graff on his breach of contract claim, finding that his insurance policy covered the clean up expenses. Graff had argued that Bowers v. Farmers Ins. Exch., 99 Wash.App. 41, 991 P.2d 734 (2000), was controlling.
Subsequently, the trial court entered judgment against Allstate for Graff's clean up expenses and loss of rents. The court also awarded Graff his attorney fees.
I. Standard of Review
A. SUMMARY JUDGMENT
This court reviews summary judgment de novo, Int'l Bhd. of Elec. Workers, Local Union No. 46 v. Trig Elec. Constr. Co., 142 Wash.2d 431, 434-35, 13 P.3d 622 (2000), cert. denied, 532 U.S. 1002, 121 S.Ct. 1672, 149 L.Ed.2d 652 (2001), and may affirm on any basis the record supports. Redding v. Virginia Mason Med. Ctr., 75 Wash.App. 424, 426, 878 P.2d 483 (1994). Summary judgment is *1268 appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).
We must also consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). A question of fact may be determined as a matter of law when reasonable minds could reach but one conclusion from the evidence presented. Central Wash. Bank v. Mendelson-Zeller, Inc., 113 Wash.2d 346, 353, 779 P.2d 697 (1989). Moreover, when the moving party meets his initial burden of showing the absence of an issue of material fact, the burden shifts to the nonmoving party to make a showing sufficient to establish the existence of an element essential to that party's case. Young v. Key Pharm., Inc., 112 Wash.2d 216, 225-26, 770 P.2d 182 (1989).
B. POLICY CONSTRUCTION
Interpreting an insurance policy is a matter of law. McDonald v. State Farm Fire & Cas. Co., 119 Wash.2d 724, 730, 837 P.2d 1000 (1992). And we interpret an insurance policy to give effect to each of its provisions. McDonald, 119 Wash.2d at 734, 837 P.2d 1000.
Whether coverage exists is a two-step process. McDonald, 119 Wash.2d at 731, 837 P.2d 1000. The insured must prove that the policy covers his loss. Thereafter, to avoid coverage, the insurer must prove that specific policy language excludes the insured's loss. Ultimately, however, "[t]he court determines coverage by characterizing the perils contributing to the loss, and determining which perils the policy covers and which it excludes." Bowers, 99 Wash.App. at 44, 991 P.2d 734.
II. Coverage
A. LOSS CHARACTERIZATION
Allstate contends that the policy's contamination exclusion bars Graff's claim. Graff, however, asserts that the vandalism and malicious mischief clause covers his loss under Bowers, 99 Wash.App. 41, 991 P.2d 734.
Graff's insurance policy covered "all risks of physical loss" to his rental house, CP at 111, but excluded the following:
4. Wear and tear; marring; scratching; deterioration; inherent vice; latent defect; mechanical breakdown; rust; mold; wet or dry rot; contamination; smog; smoke from agricultural smudging or industrial operations; settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs, or ceilings; birds, vermin, rodents, insects or domestic animals....
....
7. Vandalism and Malicious Mischief... if the dwelling has been vacant for more than 30 consecutive days immediately prior to the loss.
CP at 112 (emphasis added). In short, Graff's policy bars a claim for contamination but generally covers both vandalism and malicious mischief.
Allstate first argues that contamination caused Graff's loss because (1) Graff initially presented his loss as a contamination claim, (letter to Allstate from Graff's attorney stating that Graff "incurred costs necessary to clean[ ]up the contamination[.]" CP at 28); (2) a City of Tacoma building inspector found that Graff's house was "contaminated" by the methamphetamine lab, (3) Graff hired an environmental firm to decontaminate his house, and (4) the health department found that Graff had corrected the methamphetamine contamination. Allstate reasons that an alternate reading of the policy would nullify the contamination exclusion. See McDonald, 119 Wash.2d at 734, 837 P.2d 1000 ("An agreement should be interpreted in a way that gives effect to each provision.").
But neither Graff, the City of Tacoma, the environmental firm, nor the health department may determine the cause of Graff's loss. Rather, the court characterizes the peril causing the loss. Kish v. Ins. Co. of N. Am., 125 Wash.2d 164, 170, 883 P.2d 308 (1994). Therefore, contrary to Allstate's assertion, it is not clear that contamination caused Graff's loss. Furthermore construing *1269 the policy to cover Graff's loss would not nullify Allstate's contamination exclusion; the exclusion could still preclude other contamination claims.
B. BOWERS V. FARMERS INSURANCE EXCHANGE
Allstate next argues that Bowers, 99 Wash.App. 41, 991 P.2d 734, does not apply here. There, Farmers Insurance Exchange (Farmers) denied coverage to Ms. Bowers for mold damage to her rental house that her tenants caused by converting the basement into a marijuana grow operation. Bowers, 99 Wash.App. at 42, 991 P.2d 734. Division Three described the tenants' acts as follows:
Halide lights were used, the basement windows were covered, foil was put on the walls, and the marijuana grow operation was vented directly into the chimney. The house was otherwise sealed. All heat in the house was diverted to the basement grow operation room.
....
... They irrigated the marijuana plants under grow lights. This created a sauna-like environment in the basement. Additionally, they sealed the house and thereby trapped the water vapor generated by their activities in the basement.
Bowers, 99 Wash.App. at 43, 46-47, 991 P.2d 734. The language of Ms. Bowers' insurance policy was almost identical to Graff's, i.e., it barred claims for mold and contamination but generally covered vandalism and malicious mischief. Bowers, 99 Wash.App. at 44-45, 991 P.2d 734.
On appeal, Ms. Bowers argued that her policy covered her loss under the vandalism and malicious mischief coverage. (The court defined vandalism as "`willful or malicious destruction or defacement of things of beauty or of public or private property[,]'" and malicious mischief as "`willful, wanton, or reckless damage or destruction of another's property.'" Bowers, 99 Wash.App. at 45, 991 P.2d 734 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2532, 1367 (1993)).) Farmers countered that mold, not vandalism or malicious mischief, caused Ms. Bowers' loss.
Division Three concluded that the tenants' acts constituted vandalism, a covered loss, and were the efficient proximate cause of Ms. Bowers' loss. Bowers, 99 Wash.App. at 42, 991 P.2d 734. The court rejected Farmers' argument that the tenants' conduct was not vandalism because it was not malicious. It reasoned:
Malice may be inferred from the act of destruction. It is sufficient if the actor is guilty of wanton or intentional disregard of the rights of others. As stated in Frontier Lanes v. Canadian Indem. Co., 26 Wash. App. 342, 613 P.2d 166 (1980), "[p]roperty has been damaged `willfully and maliciously' if the damage results from an intentional act from which damage was reasonably expected to result." Id. at 347, 613 P.2d 166.
Bowers, 99 Wash.App. at 46, 991 P.2d 734 (citations omitted). Division Three found that Ms. Bowers' tenants acted in conscious or intentional disregard for her property rights and that their acts were vandalism.
Bowers is on all fours here. Graff's tenant acted in conscious or intentional disregard for Graff's property rights. Further, contrary to Allstate's claim, it can be said that vandalism, a covered peril, preceded the contamination, an excluded peril. First, Graff's tenant exposed the premises to hazardous chemicalsby cooking or by mixingand second, there was the resulting contamination.
We follow Bowers' reasoning, and it is consistent with the authority cited therein, Livaditis v. Am. Cas. Co., 117 Ga.App. 297, 160 S.E.2d 449 (1968), where a tenant directed the smoke, fumes, and vapor from his moonshine operation into a house, causing damage resulting in insurance liability. Bowers, 99 Wash.App. at 46, 991 P.2d 734. Here, the tenant's indoor methamphetamine lab created harmful vapors and residues that damaged Graff's rental house. The tenant's acts were intentional, in disregard of Graff's property interest, and the resulting damage was almost a certainty. This meets the definition of vandalism.
Allstate contends that Bowers is not controlling because Graff's tenant caused no visible damage to the house and no physical *1270 damage preceded the methamphetamine-related damage. These arguments are unpersuasive. The tenant's methamphetamine lab released hazardous vapors into the house. Moreover, visibility is not the measure of vandalism; the chemical release was measurable, even after it had contaminated the interior of the house. If the chemicals had never been released or mixed, then the contamination would not have occurred. Thus, Bowers is controlling.
III. Attorney Fees
Finally, Allstate challenges the trial court's award of attorney fees. The trial court awarded Graff his attorney fees under Olympic S.S. Co. v. Centennial Ins. Co., 117 Wash.2d 37, 811 P.2d 673 (1991). Under Olympic S.S., an insured who must sue to obtain coverage is entitled to attorney fees. Olympic S.S., 117 Wash.2d at 53, 811 P.2d 673; accord, Greengo v. Pub. Employees Mut. Ins. Co., 135 Wash.2d 799, 817 n. 6, 959 P.2d 657 (1998). Since Allstate wrongfully denied coverage, the trial court's award of attorney fees was proper.
Graff also seeks his costs, fees, and post-judgment interest on appeal under RAP 18.1. Graff has prevailed here, thus we award attorneys fees, costs, and post-judgment interest. See RAP 14.2.
Affirmed.
We concur: SEINFELD, J., and HUNT, C.J.