# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| NATHANIEL D. CUMMING AND JENNIFER CUMMING, and the marital community comprised thereof,<br><br>Appellants,<br><br>v.<br><br>UNITED SERVICES AUTOMOBILE ASSOCIATION, a Texas Reciprocal Inter-Insurance Exchange and Unincorporated Association, doing business in Washington;<br><br>Respondents,<br><br>and<br><br>BRIGHTON ENTERPRISES, INC., a Washington Corporation; and ROSS KOLDITZ, an individual,<br><br>Defendants. | No. 52913-1-II<br><br><br><br>UNPUBLISHED OPINION |

CRUSER, J. — Nathaniel and Jennifer Cumming appeal from the trial court's ruling vacating the order of default entered in favor of their rental property insurance provider, United Services Automobile Association (USAA). The Cummings also appeal from the order granting summary judgment in favor of USAA and dismissing their breach of contract, bad faith, Insurance Fair Conduct Act (IFCA), and Consumer Protection Act (CPA) claims.

The Cummings argue that (1) the trial court abused its discretion in vacating the order of default because USAA's failure to timely respond to their summons and complaint was not the product of excusable neglect. The Cummings request that this court reinstate the order of default and remand the case for further proceedings consistent with that order.

If this court affirms the order vacating default and reaches the summary judgment issue, the Cummings argue that their breach of contract claim should not have been dismissed because (2) USAA was equitably estopped from raising new grounds for denying coverage in its motion for summary judgment. If this court disagrees and considers USAA's new grounds, the Cummings argue that a material issue of fact remains regarding (3) whether they intentionally misrepresented the use of the property and (4) whether the loss would have been covered based on the level of methamphetamine residue detected. The Cummings maintain that their breach of contract claim should not have been dismissed because a (5) genuine issue of material fact remains regarding whether their claim was covered under the vandalism provision of their policy. Finally, the Cummings argue that (6) a material issue of fact remains, precluding summary judgment dismissal of their bad faith, IFCA, and CPA claims because USAA failed to conduct a reasonable investigation prior to denying coverage. The Cummings request that this court reverse the order granting summary judgment in favor of USAA and remand the case for further proceedings.

We hold that (1) the trial court did not abuse its discretion in vacating the order of default. We further hold that the trial court erred in dismissing the Cummings' breach of contract claim because (2) USAA was equitably estopped from arguing that the Cummings' claim was not covered based on their alleged material misrepresentation and the level of methamphetamine contamination. In addition, we hold that the Cummings' breach of contract claim withstands

summary judgment because (5) an issue of material fact remains regarding whether their loss was covered under the vandalism provision of the policy. Finally, we hold that (6) the trial court improperly dismissed the Cummings' bad faith, CPA, and IFCA claims because a material fact remains regarding whether USAA reasonably denied their claim.

Accordingly, we affirm the trial court's ruling vacating the order of default, but we reverse the trial court's order granting summary judgment, remanding for further proceedings as to the Cummings' breach of contract claim, bad faith, CPA, and IFCA claims.

FACTS

I. THE CUMMINGS' RENTAL PROPERTY

The Cummings own a house in Lacey, Washington that they use as a rental property. Nathaniel Cumming is a Captain in the US Army on active duty, and he and his family are stationed out of state.

In 2013, a tenant contaminated the property with methamphetamine. The Cummings remediated the damage, installed new flooring and drywall, and painted the interior walls. Subsequent testing did not detect the presence of methamphetamine following these efforts.

On September 29, 2015, the Cummings requested a quote for rental property insurance from USAA. According to USAA, at that time, the Cummings confirmed that the property was not used for farming, business, or commercial purposes. USAA issued a rental policy to the Cummings on October 13, 2015. This policy "insure[d] against 'sudden and accidental' direct physical loss to tangible property . . . unless excluded" elsewhere within the insurance contract. Clerk's Papers (CP) at 268.

On October 1, 2015, the Cummings entered into a contract with Vanguard Realty, designating Vanguard as the exclusive leasing agent for their rental property. In addition to leasing the property, Vanguard agreed to "furnish all services required for the management of property." *Id.* at 301. For example, Vanguard was authorized to make any needed repairs or alterations required for maintenance.

Vanguard leased the Cummings' property to Ross Kolditz for a term of two years, ending on October 31, 2017. Kolditz used the property as an assisted living facility for his company, Brighton Enterprises. However, the lease agreement stated that the "Property is rented as a private residence for . . . Ross Kolditz, Jeffrey Dean." *Id.* at 306. There was no information within the lease agreement indicating that the property would be used for anything other than a private residence for the two listed occupants. Kolditz was the only tenant to lease the property following the Cummings' remediation of the prior methamphetamine damage.

After the lease term ended, the Cummings asked a friend to assist them in conducting a walk-through inspection of the property. The friend discovered damage to the flooring and walls, including bleach stains on the carpets. The Cummings were planning on selling the home, and real estate agents showing the property to prospective buyers reported "an odd smell in the house that was negatively affecting their ability to sell it." *Id.* at 124. Because of their prior experience in 2013, the Cummings suspected that the residents of the assisted living facility or one of the employees may have produced methamphetamine inside the home.

The Cummings filed a claim with USAA on November 13, 2017. According to the USAA claim notes dated November 14, 2017, the Cummings had reported to USAA that their prior tenant used the home as an assisted living facility for disabled adults. The Cummings informed USAA

that they suspected either the residents or an employee may have produced methamphetamine inside the home. The Cummings had also advised USAA that their former property manager was "ineffective" and that "getting the move out inspection was a lengthy task that involved the [Better Business Bureau]." *Id.* at 204.

USAA hired Bio Clean Inc. to conduct testing of the home for methamphetamine residue. Bio Clean conducted the testing and confirmed that their swabs detected the presence of methamphetamine residue inside the home, but that the levels were below the Washington guidelines for required remediation. The Cummings discussed the test results with USAA but maintained that they wanted to remediate the property because they would be required to disclose the presence of methamphetamine to any potential buyers.

On December 18, after Bio Clean had completed its full report, USAA discussed the results with the Cummings and confirmed that remediation was not necessary. However, the Cummings nevertheless wanted to proceed with remediation. The Cummings explained that the home had a smell and that there were bleach stains on the carpet, and they requested coverage for the cost of "removal of all drywall, all finishing products, carpets flooring, duct systems [etc]." *Id.* at 229. Aside from the testing done by Bio Clean, USAA did not conduct any inspection of the property or otherwise investigate the reported damage to the floors or attempt to identify the source of the smell.

On December 20, 2017, USAA sent the Cummings a letter denying their claim. USAA denied the claim because the requested repairs were "due to pollutants in [the] rental property." *Id.* at 160. USAA explained that the Cummings' policy expressly excludes coverage for "remediation or repair of damages caused by the discharge, dispersal, seepage, migration, release or escape of

pollutants." *Id.* at 160. The policy provisions USAA identified in their denial letter included the pollutants exclusion and the provision regarding diminution in value, "meaning any reduction in value that would remain after damaged property is repaired or replaced." *Id.* at 74. No other provisions of the policy were identified as the reason for denial. The denial letter likewise did not separately address the claims regarding damage to flooring or the smell.

The Cummings retained an attorney who submitted an IFCA 20-day notice[1] on January 30, 2018 to both USAA and to the Office of the Insurance Commissioner by certified mail. USAA acknowledged receipt of the notice on February 26, 2018 and stated that it will address the claim on receipt of the complaint. USAA did not provide any additional response to the IFCA 20-day notice.

## II. ORDER OF DEFAULT

The Cummings filed their complaint on March 6, 2018. In their complaint, the Cummings acknowledged that their tenant, Kolditz, leased the property for use by Brighton Enterprises as an assisted living facility. The Cummings alleged that USAA unreasonably denied their claim, breached its obligations under their contract, breached its duty of good faith and fair dealing, and violated IFCA and the CPA. The Cummings also filed claims against Kolditz and Brighton Enterprises.[2] The Cummings served the complaint on the Office of the Insurance Commissioner

---

[1] Pursuant to RCW 48.30.015(8)(a), 20 days prior to filing an action in superior court based on IFCA, "a first party claimant must provide written notice of the basis for the cause of action to the insurer and office of the insurance commissioner."

[2] These defendants are not parties to this appeal.

as required by RCW 48.05.200(1), and service was accepted on March 9, 2018. USAA's registered agent received the complaint on March 19, 2018.

By April 20, 2018, USAA had not appeared or answered the Cummings' complaint. The Cummings filed a motion for entry of a default order against USAA, asserting that they properly served the Insurance Commissioner under RCW 48.05.200(1)[3] and that default was proper because USAA had failed to respond within the allotted 40 days as provided by RCW 48.02.200(4).[4] The trial court found that USAA was properly served and failed to timely answer or appear, and it entered an order of default on April 20, 2018.

USAA appeared in the case on April 26, 2018. USAA moved to set aside the order of default and for leave to file its answer, explaining that its failure to timely answer the Cummings' complaint was due to a calendaring error. Counsel for USAA stated that the error occurred because the firm calculated the response deadline based on the date USAA's registered agent received the complaint rather than from the date the Insurance Commissioner was served.

The Cummings opposed USAA's motion, asserting that the error did not constitute excusable neglect. The Cummings argued that USAA willfully failed to respond and that its

---

[3] RCW 48.05.200(1) provides,

> Each authorized foreign or alien insurer must appoint the commissioner as its attorney to receive service of, and upon whom must be served, all legal process issued against it in this state upon causes of action arising within this state. Service upon the commissioner as attorney constitutes service upon the insurer. Service of legal process against the insurer can be had only by service upon the commissioner, except actions upon contractor bonds pursuant to RCW 18.27.040, where service may be upon the department of labor and industries.

[4] RCW 48.02.200(4) states that "Proceedings must not be had against the person, and the person must not be required to appear, plead, or answer until the expiration of forty days after the date of service upon the commissioner."

alleged calendaring error was instead inexcusable professional incompetence. The Cummings asserted that the firm representing USAA regularly practices in insurance law and should have known how to calculate the response deadline.

Following a hearing, the trial court vacated the order of default. The trial court explained that because default judgments are disfavored and USAA moved quickly to resolve the issue, USAA should have the opportunity to defend the claim on the merits. The Cummings were awarded costs and fees for "the necessity to have to go through this process." Verbatim Report of Proceedings (VRP) (May 11, 2018) at 7. USAA answered the Cummings' complaint on June 5, 2018.

### III. CROSS MOTIONS FOR SUMMARY JUDGMENT

The Cummings moved for partial summary judgment on August 21, 2018. They argued that their loss was covered under their policy because it was caused by an act of vandalism, and that USAA's denial of their claim relying on the pollution provision was unreasonable.

USAA responded in kind by filing its own motion for summary judgment on October 19, 2018. USAA argued that the Cummings' claims should be dismissed as a matter of law because (1) the Cummings failed to disclose that their property was being used as an assisted living facility, rendering the policy void, (2) the level of methamphetamine detected in the home was too low to trigger a duty to remediate, and (3) the amount of methamphetamine residue detected was insufficient to constitute vandalism under that policy provision. USAA had not previously raised any of these grounds as a reason for denying the Cummings' insurance claim. USAA also did not reaffirm its original justification for denying the Cummings' claim, which pertained only to the

pollutants exclusion and to the provision excluding coverage for diminution in value following repairs and replacements.

In their response to USAA's claim, the Cummings argued that USAA could not raise new grounds for denying coverage in its motion for summary judgment and that material issues of fact existed as to the remaining arguments. The Cummings also explained that USAA's denial was unreasonable because USAA had failed to adequately investigate their claim.

The trial court held a hearing on both parties' motions for summary judgment. It granted USAA's motion for summary judgment and denied the Cummings' motion for partial summary judgment, ruling that USAA reasonably denied the Cummings' claim and that the Cummings' breach of contract claim fails due to their misrepresentation regarding the business use of their premises. The trial court further ruled that USAA "was not estopped from modifying its reasons for denial." VRP (Nov. 16, 2018) at 32. The trial court dismissed each of the Cummings' claims.

In addition to the trial court's ruling vacating the order of default, the Cummings also appeal the order granting USAA's motion for summary judgment and dismissing their claims.

DISCUSSION

I. DEFAULT ORDER

The Cummings argue that the trial court abused its discretion in vacating the default order entered against USAA because the untimely filed answer cannot be attributed to excusable neglect. The Cummings maintain that failure to understand the law reflects professional incompetence rather than a good faith mistake, and responsibility for defense counsel's errors is necessarily imputed onto the client. The Cummings do not dispute that defense counsel and USAA responded with due diligence upon learning that the default order had been entered.

USAA contends that it acted diligently by responding soon after it learned of the default order, and that the good faith calendaring mistake of its attorney constitutes excusable neglect. USAA further asserts that the Cummings were not prejudiced by its delay in responding and that USAA had offered to compensate the Cummings for the costs and fees incurred in seeking entry of the default.

We agree with USAA.

A. LEGAL PRINCIPLES

For an out of state insurance provider such as USAA, service of process must be made on the insurance commissioner. RCW 48.05.200(1). Service on any other person is insufficient. *Ohio Sec. Ins. Co. v. AXIS Ins. Co.*, 190 Wn.2d 348, 354, 413 P.3d 1028 (2018). An insurance company has 40 days to answer a complaint, counting from the date the complaint was served on the insurance commissioner. RCW 48.02.200(4).

Under CR 55(a)(1), when a defendant fails to timely answer a complaint, a plaintiff may move for default. *See also* CR 12(a)(4) (providing that a defendant must file an answer within the period designated by any applicable statutes or rules). A defendant may then seek to set aside a default *order* "[f]or good cause shown and upon such terms as the court deems just." CR 55(c)(1). If a *judgment* by default has been entered, then the defendant may seek to set aside the default judgment under CR 60(b).

Different standards govern when it is appropriate to set aside a default order as opposed to a default judgment. *Sellers v. Longview Orthopedic Assocs., PLLC*, 11 Wn. App. 2d 515, 519-20, 455 P.3d 166 (2019), *review denied*, 195 Wn.2d 1017, 461 P.3d 1201 (2020). Setting aside a default judgment in accordance with CR 60(b) requires the moving party to show

(1) that there is substantial evidence supporting a prima facie defense; (2) that the failure to timely appear and answer was due to mistake, inadvertence, surprise, or excusable neglect; (3) that the defendant acted with due diligence after notice of the default judgment; and (4) that the plaintiff will not suffer a substantial hardship if the default judgment is vacated.

*Little v. King*, 160 Wn.2d 696, 703-04, 161 P.3d 345 (2007).

To establish "good cause" to set aside a default order under CR 55(c)(1), "a party may demonstrate excusable neglect and due diligence." *In re Estate of Stevens*, 94 Wn. App. 20, 30, 971 P.2d 58 (1999). This court has recently held, however, that although "excusable neglect often will be a key factor for a trial court to consider" in setting aside a default order, "excusable neglect is not always required." *Sellers*, 11 Wn. App. 2d at 525. For example, a trial court may exercise its discretion and find good cause to vacate a default order even if the default was caused by defense counsel's inexcusable neglect. *Id.*

Courts prefer to decide cases on their merits rather than by default, and default judgments are generally disfavored in Washington. *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 581, 599 P.2d 1289 (1979). Courts also consider the countervailing policy that values an "organized, responsive, and responsible judicial system" that requires litigants to adhere to court rules. *Little*, 160 Wn.2d at 703. When balancing these competing policy interests, courts must ultimately be guided by "'whether or not justice is being done.'" *Id.* (internal quotation marks omitted) (quoting *Griggs*, 92 Wn.2d at 582). For this reason, "this system is flexible" by design, and courts are vested with broad discretion when deciding whether to vacate a default order or judgment. *Id.*; *see also Brooks v. University City, Inc.*, 154 Wn. App. 474, 479, 225 P.3d 489 (2010) ("The decision to vacate an order of default is addressed to the sound discretion of the trial judge.").

This court reviews for abuse of discretion a trial court's decision to set aside a default order. *Sellers*, 11 Wn. App. 2d at 520. "A trial court abuses its discretion when it is exercised on untenable grounds or for untenable reasons." *Ha v. Signal Elec., Inc.*, 182 Wn. App. 436, 449, 332 P.3d 991 (2014). This court is less likely to determine that a trial court has abused its discretion when the default is set aside. *Id.*

B. ANALYSIS

The trial court properly exercised its discretion in weighing facts beyond the reason for delay, and its decision to vacate the default order was just and equitable. Under the less restrictive standard for vacating a default order under CR 55(c)(1), a trial court is permitted to weigh other factors in finding good cause to set aside the order, such as the defendant's conduct, due diligence, and prejudice to the plaintiff. *Sellers*, 11 Wn. App. 2d at 526.

The Cummings rely on *Prest v. American Bankers Life Assurance Co.*, 79 Wn. App. 93, 99-100, 900 P.2d 595 (1995), to argue that USAA, as a sophisticated client, has a duty to ensure that it responds to legal process and its failure to do so within the 40-day deadline was inexcusable. In *Prest*, general counsel for the insurance company, who also acted as the insurance company's registered agent, had been reassigned to a non-legal position within the company and was out of town when the insurance commissioner forwarded the complaint, causing the complaint to be mislaid. 79 Wn. App. at 96, 100. This court reversed the order vacating default judgment, holding that the insurance company's failure to timely respond under these circumstances was neglectful but not excusable. *Id.* at 100.

*Prest* is distinguishable. First, *Prest* involved a default judgment as opposed to a default order, 79 Wn. App. at 96, and although courts are guided by the same principles in both instances,

vacating a default judgment requires a showing of excusable neglect whereas vacating a default order does not. *Sellers*, 11 Wn. App. 2d at 519-20, 525. Second, the error in *Prest* resulted from the defendant company's internal organizational failure to ensure that someone was available to respond to legal process. 79 Wn. App. at 100. Here, USAA was not at fault for the failure to timely respond; the delay resulted from its attorney's mistaken interpretation of the service of process statutes. Defense counsel readily admitted that the firm was wholly responsible for the tardy filing and that USAA was blameless.

*Sellers* is on point. 11 Wn. App. 2d at 525-26. There, this court held that "'good cause' under CR 55(c)(1) must be a flexible concept" that accounts for the facts unique to each case. *Sellers*, 11 Wn. App. 2d at 525. "The trial court in the exercise of its discretion and to fashion a fair and reasonable result may find good cause based on appropriate facts even if the default resulted from defense counsel's inexcusable neglect." *Id.* This court held that although the trial court found that defense counsel's failure to timely respond was inexcusable neglect, the trial court did not abuse its discretion when it also weighed the client's blameless conduct, the client's due diligence, and the lack of prejudice to the plaintiff in determining that good cause existed to vacate the default order. *Id.* at 526.

Similar to *Sellers*, here USAA was not at fault for the delay in answering the Cummings' complaint. In addition, the trial court specified in its oral ruling that,

> The Court does favor resolving matters on their merits, and this certainly was acted upon quickly, and I believe, consistent with the case law, the moving party should be granted the ability to have their client involved in this litigation, and that is the order of the Court.

VRP (May 11, 2018) at 7. The trial court also mentioned that the result would be "less harsh" given that the plaintiffs and plaintiffs' counsel would be compensated "for the necessity to have to

13

go through this process and even this motion today to set aside the default." *Id.* The trial court did not abuse its discretion in considering these facts when it determined that good cause existed under CR 55(c)(1) to set aside the default order, regardless of whether counsel's mistake was excusable or inexcusable neglect. The trial court's decision was consistent with the well-established policy that courts should liberally apply CR 55 and CR 60. *Morin v. Burris*, 160 Wn.2d 745, 754-55, 161 P.3d 956 (2007).

We hold that the trial court did not abuse its discretion in granting USAA's motion to vacate the order of default.

## II. ORDER GRANTING SUMMARY JUDGMENT

### A. STANDARD OF REVIEW

#### 1. SUMMARY JUDGMENT STANDARD

This court reviews a trial court's decision to grant summary judgment de novo. *Specialty Asphalt & Constr., LLC v. Lincoln County*, 191 Wn.2d 182, 191, 421 P.3d 925 (2018). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). This court considers all facts and reasonable inferences in the light most favorable to the nonmoving party. *Allstate Ins. Co. v Raynor*, 143 Wn.2d 469, 475, 21 P.3d 707 (2001).

A question of fact can be resolved as a matter of law on summary judgment "'when reasonable minds could reach but one conclusion.'" *Owen v. Burlington N. Santa Fe R.R. Co.*, 153 Wn.2d 780, 788, 108 P.3d 1220 (2005) (quoting *Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985)). But where reasonable minds can differ, "the question of fact is one for the trier of fact, and summary judgment is not appropriate." *Id.*

*2. POLICY INTERPRETATION*

This court reviews de novo issues involving interpretation of language in an insurance policy. *Vision One, LLC v. Phila. Indem. Ins. Co.*, 174 Wn.2d 501, 512, 276 P.3d 300 (2012). Courts construe insurance policies from the perspective of the average consumer, "giving the language 'a fair, reasonable, and sensible construction.'" *Id.* (internal quotation marks omitted) (quoting *Key Tronic Corp. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124 Wn.2d 618, 627, 881 P.2d 201 (1994)). Terms that are undefined in the policy are given their ordinary meaning. *Id.* And where the policy is ambiguous, this court will construe the ambiguity against the drafter. *Id.* Similarly, coverage exclusions are construed strictly against the insurer and this court "'will not extend [exclusions] beyond their clear and unequivocal meaning.'" *Id.* (alteration in original) (quoting *State Farm Fire & Cas. Co. v. Ham & Rye, LLC*, 142 Wn. App. 6, 13, 174 P.3d 1175 (2007)).

B. CONTRACTUAL CLAIM

The Cummings contend that the trial court erred in dismissing their breach of contract claim because a genuine issue of material fact remains as to whether their loss was covered under the vandalism provision of their policy.[5] The Cummings assert that USAA was equitably estopped from arguing that their claim was not covered due to their alleged misrepresentation regarding the

---

[5] The Cummings construe this issue as a challenge to the reasonableness of USAA's denial of their claim. This framing is incorrect. "Reasonableness" pertains to the bad faith, IFCA, and CPA claims. *See Shields v. Enter. Leasing Co.*, 139 Wn. App. 664, 676, 161 P.3d 1068 (2007); *see also* RCW 48.30.015(1). But if USAA was simply wrong about whether the claim should be covered that does not mean the denial was "unreasonable." *See Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co.*, 122 Wn. App. 736, 756, 87 P.3d 774 (2004). So, in spite of the Cummings' framing this issue as a question of reasonableness, it is actually a question of whether the claim was covered, which pertains to their breach of contract claim.

business use of their property, the fact that the level of contamination did not require remediation, and that the level of contamination was too low to constitute vandalism, because it did not present these grounds for denial in the initial denial letter. The Cummings maintain that even if USAA was not estopped from raising these new grounds for denying coverage, the new grounds do not warrant summary judgment dismissal of their breach of contract claim.

USAA responds that the Cummings' loss was not covered and that the trial court properly dismissed the Cummings' claim. USAA denies that it was equitably estopped from presenting new reasons that the Cummings' claim was not covered in its motion for summary judgment. USAA maintains that the breach of contract claim was properly dismissed on summary judgment because the Cummings misrepresented the business use of their property, the policy does not cover structures used for business purposes, the damages to the property were not sudden or accidental, the loss was not covered because the level of methamphetamine contamination was too low to require remediation, and because the level of contamination was too low to require remediation, the vandalism provision of the Cummings' policy does not apply.

The trial court erred in dismissing the Cummings' breach of contract claim on summary judgment. USAA was equitably estopped from arguing that the Cummings' policy was void due to their alleged misrepresentation, and that the loss was not covered because the level of

methamphetamine contamination was below the decontamination standard required remediation.[6]

However, because the Cummings argued that their loss was covered under the vandalism provision of their policy in their motion for partial summary judgment, they were not prejudiced when USAA responded that the levels of contamination were insufficient to constitute vandalism. Although we consider USAA's counterargument, we agree with the Cummings that a genuine issue of material fact remains as to whether the Cummings' claim was covered under the vandalism provision of their policy.

*1. EQUITABLE ESTOPPEL*

a. Legal Principles

Insurers have an affirmative duty to specify the basis for denying a claim. WAC 284–30–380; *see also Vision One*, 174 Wn.2d at 520 ("A provision must be asserted as a basis for denying coverage."). WAC 284–30–380 provides in pertinent part that,

> (1) Within fifteen working days after receipt by the insurer of fully completed and executed proofs of loss, the insurer must notify the first party claimant whether the claim has been accepted or denied. The insurer must not deny a claim on the grounds of a specific policy provision, condition, or exclusion unless reference to the specific provision, condition, or exclusion is included in the denial. . . .

---

[6] The Washington department of health is responsible for promulgating rules and standards related to property contamination. RCW 64.44.070. When a property is "contaminated," a public health officer issues an order declaring the property unfit for use. RCW 64.44.030(1). Under RCW 64.44.010(2), a property is "'[c]ontaminated'" when it is "polluted by hazardous chemicals so that the property is unfit for human habitation or use due to immediate or long-term hazards." Methamphetamine is considered a "'[h]azardous chemical[]'" when it is detected "in amounts exceeding the decontamination standards set by the department." RCW 64.44.010(4)(a). The decontamination standard for methamphetamine includes amounts "less than or equal to 1.5 micro grams per 100 square centimeters." WAC 246-205-541(1). If a property owner has received an order from the local public health officer declaring the property unfit for use, the property owner must then demolish, dispose of, or decontaminate the property. RCW 64.44.050(2)(b). Here, the level of methamphetamine contamination was below the decontamination standard, with the highest reading showing a contamination level of 0.38 micrograms per 100 square centimeters.

(2) If a claim is denied for reasons other than those described in subsection (1) and is made by any other means than in writing, an appropriate notation must be made in the claim file of the insurer.

Although insurers are not expressly precluded from modifying the basis for denying a claim, Washington courts have recognized a form of equitable estoppel that applies when an insurer shifts its grounds for denying an insurance claim after submitting an initial denial letter. *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 63, 1 P.3d 1167 (2000). Where "an insurer denies liability under the policy for one reason, while having knowledge of other grounds for denying liability, it is estopped from later raising the other grounds in an attempt to escape liability, provided that the insured was prejudiced by the insurer's failure to initially raise the other grounds." *Bosko v. Pitts & Still Inc.*, 75 Wn.2d 856, 864, 454 P.2d 229 (1969). An insurer may also be equitably estopped from raising new grounds for denying coverage where the insured can demonstrate that the insurer acted in bad faith when it failed to raise all grounds for denial in its initial letter. *Hayden*, 141 Wn.2d at 63.

b. Analysis

The Cummings contend that USAA was equitably estopped from asserting new reasons that the claim was not covered for the first time in its motion for summary judgment. The Cummings argue that USAA had all the necessary facts available to raise these grounds before it denied their claim, and they suffered prejudice because they based their complaint, discovery efforts, and motion for partial summary judgment on the grounds USAA presented in the denial letter.

USAA responds that estoppel does not apply because it did not voluntarily and intentionally waive its right to assert new grounds for denying coverage after it filed the initial

denial letter.[7] USAA takes exception to the fact that the new grounds it raised in the motion for summary judgment were truly "'new,'" and further contends that the Cummings have failed to demonstrate that they have suffered prejudice. Br. of Resp't at 32. USAA asserts that there was no prejudice because the Cummings were aware that USAA declined to remediate their property due to the level of methamphetamine contamination.

USAA was equitably estopped from arguing that the Cummings' claim was not covered due to the Cummings' alleged misrepresentation regarding the business use of their property and the fact that the level of methamphetamine was below the standard for required remediation. We adopt the reasoning in *Karpenski v. American General Life Cos., LLC*, that prejudice can occur in the form of wasted litigation efforts expended addressing grounds for denying coverage that the insurance company has later abandoned and replaced with new reasons for denying coverage. 999 F. Supp. 2d 1235, 1245-46 (W.D. Wash. 2014). However, USAA was not estopped from asserting that the levels of contamination were insufficient to constitute vandalism because the Cummings were not prejudiced when USAA raised this argument.

Following the rule announced in *Bosko,* USAA is equitably estopped from raising the Cummings' alleged failure to disclose the business use of their property and the lack of a covered loss due to insufficient levels of contamination to support its argument that the Cummings' claim

---

[7] USAA argues that for equitable estoppel to apply, the Cummings are required to show that USAA voluntarily and intentionally waived its right to later raise new grounds for denying the Cummings' claim. However, no court analyzing equitable estoppel in this context has required an insured party to show that the insurer knowingly and voluntarily waived its right to change the grounds for denial, and none of the authority USAA cites supports this proposition. *See* Br. of Resp't at 31 (citing *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 339-40, 779 P.2d 249 (1989) (holding that the doctrines of waiver and estoppel have a different focus and must be separately analyzed) and *Specialty Surplus Ins. Co. v. Second Chance, Inc.*, 412 F. Supp. 2d 1152 (W.D. Wash. 2006) (an unpublished federal case that separately analyzes equitable estoppel and waiver)).

was not covered. *See* 75 Wn.2d at 864. USAA was aware of the facts necessary to deny coverage on these grounds prior to issuing the denial letter, and its failure to raise these grounds for denial until it moved for summary judgment prejudiced the Cummings. *See id.*

*Karpenski* presents an analogous situation. 999 F. Supp. 2d at 1244-46. There, a life insurance company voided the policy because the insured did not disclose her joint and musculoskeletal disorders. *Id.* at 1244. After an extensive review period and after litigation had commenced, the insurer argued in its motion for summary judgment that the insured made a number of other misrepresentations distinct from those previously asserted as a basis for voiding the policy. *Id.* The federal court explained that application of estoppel "precludes Defendants from changing their grounds for rescission from those that they stood on prior to the onset of litigation." *Id.* at 1245. It also determined that the insured was "clearly prejudiced by Defendants' shifting grounds in that she brought her complaint on the basis of American General's denial letter and prepared her case with the understanding that her claim was denied solely due to alleged failure to disclose joint or musculoskeletal disorders." *Id.* at 1246.

Here, by November 14, 2017, USAA knew that the Cummings' prior tenant operated an assisted living facility on the insured property. In addition, Bio Clean submitted its report describing methamphetamine contamination levels on November 22, 2017, and USAA informed the Cummings that according to this report, the home tested below required remediation levels on December 18, 2017.

However, in the denial letter dated December 20, 2017, USAA limited its explanation for denying the Cummings' claim to the fact that methamphetamine is a pollutant and damage from pollutants is not a covered loss under the policy. USAA also stated that the policy does not provide

coverage for diminution in value after damaged property has been repaired or replaced. USAA did not provide any other reason for denying the Cummings' claim, and it did not cite any other policy provisions nor mention Washington remediation guidelines.

After the Cummings submitted their 20-day IFCA notice to USAA, USAA had an opportunity to resolve the basis of the Cummings' action before the Cummings filed their complaint. RCW 48.30.015. However, USAA did not take this opportunity to assert alternate grounds justifying its denial of coverage. And in answering the Cummings' complaint, USAA likewise did not raise any alternative ground for denying the Cummings' claim as an affirmative defense.

Despite having the information necessary to deny coverage due to the Cummings' alleged misrepresentation or due to insufficient levels of contamination to compel remediation, USAA did not present these bases for denying coverage until October 19, 2018, nearly 10 months after USAA denied the Cummings' claim and the Cummings filed a lawsuit and a motion for partial summary judgment addressing the pollutants exclusion. In its motion for summary judgment, USAA did not reaffirm its original position that the Cummings' claim was not covered under the pollutants exclusion and the provision excluding coverage for diminution in value for repaired or replaced property.

The Cummings were prejudiced by USAA's actions because they prepared their case around USAA's initial reason for denying their claim, which USAA later abandoned and substituted with new arguments well after litigation was underway. Under *Karpenski,* these facts are sufficient to demonstrate prejudice and warrant application of equitable estoppel. 999 F. Supp. 2d at 1246.

USAA contends that it did not modify its original basis for denying the Cummings' claim because it stated that removal and replacement of the drywall, finishing products, flooring, and duct systems were not covered and because the Cummings were aware of the Bio Clean report and USAA's position that the contamination levels were too low to necessitate remediation. But this argument is not well taken because even if the contamination levels and the necessity for remediation factored into USAA's decision, it did not provide this explanation in the denial letter. It stated only that the requested repairs are not covered (as opposed to unnecessary) due to the pollutants exclusion and that it does not cover losses arising from the diminished value of the property following replacement or repair. But even if the level of contamination were high enough to require remediation, the pollutants exception would have theoretically applied. These grounds for denial are distinct. And the Cummings were prejudiced because they focused their motion for partial summary judgment on the narrow reason provided by USAA in denying their claim, arguing that the proximate cause of their loss was vandalism as opposed to the escape of pollutants.

However, to the extent that USAA raised the low level of contamination not as a new ground for denying the Cummings' claim but as a counterargument to the Cummings' claim that the vandalism provision applied, it was not estopped from presenting that argument for this narrow purpose. The Cummings were not prejudiced when USAA raised this point in its motion for summary judgment because the Cummings were the first to present the vandalism issue and should have anticipated that USAA would deny that this coverage provision applied.

Consequently, USAA was estopped from arguing that the Cummings' claim was not covered due to the Cummings' alleged material misrepresentation or due to the lack of a covered loss based on the contamination levels.

For the same reasons, we also decline to address USAA's arguments, raised for the first time before this court, that the Cummings' breach of contract claim fails because the policy does not cover structures used for business purposes and that the loss was not "sudden and accidental" within the meaning of the policy. Br. of Resp't at 15-16. Not only did USAA fail to raise these provisions in its initial denial letter despite being aware of the nature of the claimed loss and that the Cummings' property had been used as an assisted living facility, it also failed to raise these argument before the trial court. USAA's argument on summary judgment was limited to the fact that the Cummings' failure to disclose the business use of their property constituted a material misrepresentation that voided the policy and that the contamination level was too low to require remediation or to constitute vandalism.

## 2. COVERED LOSS UNDER THE VANDALISM PROVISION

The Cummings argue that their breach of contract claim withstands summary judgment because a genuine issue of material fact remains as to whether their losses were covered under the vandalism provision of the policy. However, USAA contends that the Cummings' claim is not covered under the vandalism provision because the amount of contamination was too low to prove that methamphetamine was produced on the property or to require decontamination. We agree with the Cummings that a genuine dispute of material act remains regarding whether vandalism was the proximate cause of their loss. Accordingly, summary judgment dismissal of the Cummings' breach of contract claim was improper.

a. Legal Principles

To determine whether a loss is covered, "'[t]he insured must show the loss falls within the scope of the policy's insured losses.'" *Moeller v. Farmers Ins. Co. of Wash.*, 173 Wn.2d 264, 272,

267 P.3d 998 (2011) (alteration in original) (quoting *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 731, 837 P.2d 1000 (1992)). An insurer avoids coverage if the insurer can show that the loss is excluded by specific language in the policy. *Id.* Any ambiguities in an exclusion provision will be construed in favor of the insured. *Id.*

Courts characterize the perils contributing to the insured's loss and determine which perils are covered and which are excluded. *Bowers v. Farmers Ins. Exch.*, 99 Wn. App. 41, 44, 991 P.2d 734 (2000). "Peril" is a term of art that refers to "'fortuitous, active, physical forces'" that cause an insured's loss. *Vision One*, 174 Wn.2d at 513 (quoting *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 406, 770 P.2d 704, 257 Cal. Rptr. 292 (1989)).

When a loss occurs as a result of two or more perils, and one peril is covered and the other is not, the court determines which peril is the efficient or predominant cause of the loss. *Bowers*, 99 Wn. App. at 47-48. "It is the efficient or predominant cause which sets into motion the chain of events producing the loss which is regarded as the proximate cause, not necessarily the last act in a chain of events." *Graham v. Pub. Emps. Mut. Ins. Co.*, 98 Wn.2d 533, 538, 656 P.2d 1077 (1983). If a covered peril is the proximate cause of the loss, then the loss is covered regardless of whether subsequent events contributing to that loss are excluded. *Bowers*, 99 Wn. App. at 47. When the issue before the court concerns which peril is the proximate cause of the loss, it should be "referred to the factfinder unless the facts are undisputed and there can be no reasonable difference of opinion regarding their meaning." *Id.* at 48.

If the proximate cause of the Cummings' loss was vandalism, a covered peril, as opposed to pollution, the uncovered peril on which USAA initially denied the Cummings' claim, then USAA is liable under the Cummings' insurance policy, and dismissal of their breach of contract

claim was improper. *See id.* at 44, 47. The Cummings' policy provides that it does not cover losses resulting from the "discharge, dispersal, seepage, migration, release or escape of 'pollutants.'" CP at 271. "'Pollutants'" as defined within the policy include solid, liquid, gaseous, or thermal irritants or contaminants. *Id.* at 258. However, the Cummings' policy does cover acts of "vandalism and malicious mischief . . . and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief," unless the property has been vacant for more than 90 consecutive days before the loss. *Id.* at 271.

The Cummings' policy does not define vandalism or malicious mischief, so this court must look to the plain meaning of these terms. *Vision One*, 174 Wn.2d at 512. This court has previously defined vandalism as used in an insurance policy as "'willful or malicious destruction or defacement of things of beauty or of public or private property.'" *Bowers*, 99 Wn. App. at 45 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2532 (1993). This court also defined malicious mischief as "'willful, wanton, or reckless damage or destruction of another's property.'" *Id.* (quoting WEBSTER'S, supra, at 1367).

b. Analysis

The Cummings rely on *Graff v. Allstate Insurance Co.*, 113 Wn. App. 799, 804, 54 P.3d 1266 (2002)*,* to argue that methamphetamine contamination may constitute vandalism. In that case, the insured's tenant manufactured methamphetamine on the property but did not cause any visible damage. *Graff*, 113 Wn. App. at 801. However, the City of Tacoma determined that the house was uninhabitable due to methamphetamine residue and could not be occupied until it was decontaminated. *Id.* After the insurer denied the insured's claim because contamination was an excluded peril under the policy, the insured sued for breach of contract, arguing that vandalism

was the proximate cause of loss. *Id.* at 801-03. This court held that because "[t]he tenant's acts were intentional, in disregard of Graff's property interest, and the resulting damage was almost a certainty," the insured's loss was covered under the vandalism provision of the policy. *Id.* at 806. Vandalism, not contamination, was the proximate cause of loss, although the tenant did not cause any visible damage to the property and the property was contaminated by emission of hazardous chemicals before any physical repairs became necessary. *Id.*

USAA argues that *Graff* is distinguishable and that vandalism was not the cause of the Cummings' loss, because here, the amount of methamphetamine detected was too low to prove that the tenant had operated a laboratory or to compel decontamination.[8] This argument is without merit. This court cannot determine, based on the amount of residue alone, that methamphetamine was not produced on the property. In addition, neither fact was necessary to this court's determination in *Graff* that the vandalism provision applied. *See* 113 Wn. App. at 805-06.

Instead, the dispositive issue in *Graff* was whether the "tenant acted in conscious or intentional disregard for Graff's property rights." *Id.* at 805. In *Bowers*, an earlier case involving an indoor marijuana grow operation, this court similarly emphasized that vandalism is the cause of loss if "'the damage results from an intentional act from which damage was reasonably expected to result.'" *Bowers*, 99 Wn. App. at 46 (quoting *Frontier Lanes v. Canadian Indem. Co.*, 26 Wn.

---

[8] USAA misconstrues language in *Graff* to argue that "[t]he *Graff* court explicitly held it was the presence of a methamphetamine laboratory that results in coverage under the vandalism provision of an insured's policy because it is the act of 'cooking or mixing' methamphetamines that leads to the contamination of the property." Br. of Resp't at 13 (citing 113 Wn. App. at 805-06). This court did not say that coverage under the vandalism provision required evidence of cooking or mixing methamphetamine, as USAA suggests. Rather, this court said that because the tenant's act of "cooking or mixing" methamphetamine came before the contamination by methamphetamine, vandalism and not contamination was the proximate cause of loss. *Graff*, 113 Wn. App. at 805-06.

App. 342, 347, 613 P.2d 166 (1980)). The existence of a methamphetamine laboratory provided evidence of an intentional, destructive act in *Graff*, but it was not strictly necessary for coverage under the vandalism provision. 113 Wn. App. at 806. In addition, whether decontamination is necessary pertains to the extent of damage, it is not determinative of whether that damage was caused by an act that meets the definition of vandalism.

Here, methamphetamine was detected throughout the Cummings' property. But the record does not contain sufficient evidence regarding how the hazardous vapors were released to allow this court to resolve, on summary judgment, whether the Cummings' tenants acted in conscious or intentional disregard of the Cummings' property rights. *See Graff*, 99 Wn. App. at 805. If the vandalism provision applies, it will be the proximate cause of the Cummings' loss because the tenants' act necessarily preceded the pollution arising therefrom. *See id.* at 806. Consequently, a material issue of fact remains as to whether the Cummings' loss occurred as a result of a covered peril, and their breach of contract cause of action withstands USAA's motion for summary judgment.

C. EXTRACONTRACTUAL CLAIMS

The Cummings argue that their bad faith, CPA, and IFCA claims withstand summary judgment because a genuine issue of material facts remains as to whether USAA reasonably denied their claim. The Cummings maintain that USAA's denial was unreasonable because the insurer did not fully and fairly investigate their claim prior to denying coverage.

In response, USAA argues that summary judgment dismissal of the Cummings' bad faith, CPA, and IFCA claims was proper because it reasonably denied the Cummings' claim. USAA

contends that its investigation was reasonable and that its conduct was neither unfair nor deceptive, defeating each of the Cummings' extracontractual claims as a matter of law.

We agree with the Cummings that a material issue of fact remains as to whether USAA reasonably investigated the Cummings' claim prior to denying coverage. Therefore, summary judgment dismissal of the Cummings' bad faith, CPA, and IFCA claims was improper.

### 1. LEGAL PRINCIPLES

Insurers owe policyholders a duty to act in good faith. *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 484, 78 P.3d 1274 (2003). Within the insurance code, RCW 48.01.030 provides that "[t]he business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters." The legislature has authorized the insurance commissioner to promulgate regulations, adopted under chapter 284-30 WAC, that pertain to the claims-handling process. *St. Paul Fire and Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 129, 196 P.3d 664 (2008) (citing RCW 48.01.010). These regulations define specific acts or practices by an insurer that may constitute breach of the duty to conduct its business in good faith. *Am. Mfrs. Mut. Ins. Co. v. Osborn*, 104 Wn. App. 686, 697, 17 P.3d 1229 (2001) (citing RCW 48.30.010; WAC 284–30–300 to –800). Whether an insurer's conduct amounts to bad faith is a question of fact. *Smith*, 150 Wn.2d at 484.

Bad faith handling of a claim gives rise to a tort cause of action. *Id.* In addition, a single violation of a chapter 284-30 WAC regulation establishes a per se unfair or deceptive practice that entitles an insured to bring a private action against an insurer under the CPA. *St. Paul Fire*, 165 Wn.2d at 129; *see also Indus. Indem. Co. of the Nw., Inc. v. Kallevig*, 114 Wn.2d 907, 921, 792 P.2d 520 (1990).

28

"To succeed on a bad faith claim, the policyholder must show that the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded." *Smith*, 150 Wn.2d at 484. Evidence of intentional bad faith or fraud is not required. *Kallevig*, 114 Wn.2d at 916. An insurer has acted in bad faith if it denies coverage without a reasonable justification. *Id.* at 917.

To prevail on a CPA claim, "'a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation.'" *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 685, 389 P.3d 476 (2017) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986)). Identifying a violation of WAC 284-30 satisfies the first two elements. *Hayden*, 141 Wn.2d at 62. The public interest element may also be satisfied per se where an insurer has violated a statute that contains "a specific legislative declaration of public interest impact." *Hangman Ridge*, 105 Wn.2d at 791. CPA claims alleging unfair insurance practices satisfy this requirement because in RCW 48.01.030, the legislature has specifically declared that the "'business of insurance is one affected by the public interest.'" *Anderson v. State Farm Mut. Ins. Co.*, 101 Wn. App. 323, 330, 2 P.3d 1029 (2000).

An insurer's duty to act in good faith is separate from its duty to indemnify a covered loss. *Coventry Assocs. v Am. States Ins. Co.*, 136 Wn.2d 269, 279, 961 P.2d 933 (1998). Therefore, an insured may maintain an action for bad faith and a CPA violation even if the insurer was ultimately correct in determining that the insured's claim was not covered. *Id.*

The dispositive issue in both bad faith and CPA claims is whether the insurer provided a reasonable basis for denying coverage because a reasonable basis for denial "'constitutes a complete defense to any claim that the insurer acted in bad faith or in violation of the [CPA]'"

*Shields v. Enter. Leasing Co.*, 139 Wn. App. 664, 676, 161 P.3d 1068 (2007) (quoting *Dombrosky v. Farmers Ins. Co.*, 84 Wn. App. 245, 260, 928 P.2d 1127 (1996)). The inverse is also true in that if the insurer incorrectly denies coverage but its conduct was reasonable, it has not acted in bad faith or violated the CPA. *Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co.*, 122 Wn. App. 736, 756, 87 P.3d 774 (2004); *see also Roberts v. Allied Grp. Ins. Co.*, 79 Wn. App. 323, 326, 901 P.2d 317 (1995).

An insurer unreasonably denies a claim when it fails to undertake a good faith investigation of the facts prior to denying coverage. *Kallevig*, 114 Wn.2d at 917. "[S]uspicion and conjecture," alone are insufficient to establish a "reasonable justification" for denying a claim. *Id.* Similarly, WAC 284-30-330(4) provides that "[r]efusing to pay claims without conducting a reasonable investigation" is an unfair or deceptive act.

IFCA provides policyholders with an additional avenue for redressing wrongfully denied claims. *Perez-Crisantos*, 187 Wn.2d at 679. A "first party claimant" may recover damages under IFCA upon a showing that the insurer has "unreasonably denied a claim for coverage or payment of benefits." RCW 48.30.015(1). IFCA incorporates by reference the regulations promulgated by the insurance commissioner that direct insurers to act fairly and promptly. *Perez-Crisantos*, 187 Wn.2d at 678 (citing WAC 284–30–330, -350, -360, -370, -380). Although not all violations of these regulations are actionable under IFCA, a violation of WAC 284–30–330(4) for refusing to pay a claim without conducting a reasonable investigation could potentially be actionable. *Perez-Crisantos*, 187 Wn.2d at 678.

2. *ANALYSIS*

The Cummings argue that a genuine issue of fact remains regarding whether USAA failed to conduct a reasonable investigation of their claim. The Cummings contend that although they reported a strange odor that permeated throughout their house as well stains to their carpeting, USAA never investigated that damage prior to denying their claim. As a result, the Cummings assert that USAA's denial was unreasonable and that the trial court erred in dismissing their bad faith, IFCA, and CPA claims.

USAA maintains that it reasonably denied coverage based on the investigation conducted by Bio Clean. USAA responds that because that investigation revealed that the methamphetamine levels were below the decontamination standard, it reasonably denied the Cummings' request that it cover the cost of remediation. USAA explains that it was "willing to consider and review any additional information or evidence [the Cummings] may have had concerning the methamphetamine residue" if the Cummings had presented it to the insurer. Br. of Resp't at 26.

We agree with the Cummings that a genuine issue of material fact remains regarding whether USAA failed to conduct a reasonable investigation of the Cummings' claim. Therefore, a genuine issue of material fact also remains with respect to whether USAA unreasonably denied the Cummings' claim. Consequently, summary judgment dismissal of the Cummings' bad faith, CPA, and IFCA claims was improper.

The record contains evidence that USAA improperly denied the Cummings' claim based on mere "suspicion and conjecture." *See Kallevig*¸ 114 Wn.2d at 917. When the Cummings initially filed their claim with USAA, they reported that there was "a strange smell in the house." CP at 203. The Cummings informed USAA of their suspicion that the smell was caused by

31

methamphetamine residue from a laboratory. After Bio Clean inspected the property but before USAA denied their claim, the Cummings reported damage to their carpet from possible bleach stains. USAA did not investigate the reported carpet damage.

USAA appears to have taken the Cummings at their word that their damage was related to methamphetamine, and upon learning that the amount of methamphetamine was below the decontamination standard, it denied the Cummings' claim without further investigation. However, the Bio Clean test did not uncover the source of the Cummings' reported damage and was limited to detecting the presence of methamphetamine residue. USAA never inspected the flooring, nor did it attempt to determine, given the Bio Clean contamination results, whether the smell could have been caused by something other than methamphetamine. There remains a question of fact regarding USAA's instructions to Bio Clean regarding the scope of Bio Clean's investigation and whether that investigation would have been sufficient to uncover the source of the Cummings' damage. If Bio Clean only looked at habitability and the requirement to remediate under the WAC, reasonable minds could conclude that USAA's decision to restrict its investigation in this manner was unreasonable and in bad faith.

By declining to further investigate the source of the Cummings' damage, whether methamphetamine related or not, USAA "plac[ed] the insured in the difficult position of having to perform its insurer's statutory and contractual obligations." *Coventry*, 136 Wn.2d at 279. But the Supreme Court has specified that the burden of fully and fairly investigating a claim belongs to the insurer. *Id.* Here, to determine the source of their loss related to the odor and the stains on their flooring, the Cummings were effectively compelled to conduct their own investigation.

The Cummings have presented sufficient evidence of USAA's bad faith investigation of their claim to raise a question of material fact. Consequently, summary judgment dismissal of the Cummings' bad faith, CPA, and IFCA claims, which each turn on whether USAA reasonably denied their request for coverage, was improper. *See Shields*, 139 Wn. App. at 676; *see also Perez-Crisantos*, 187 Wn.2d at 678.

## ATTORNEY FEES

The Cummings request reasonable attorney fees on appeal under RAP 18.1 based on RCW 19.86.090, RCW 48.30.015, and *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). However, because we remand the case for further proceedings on each of the Cummings' claims, the prevailing party has not yet been determined. The Cummings are not entitled to attorney fees for this appeal.

## CONCLUSION

We hold that the trial court did not abuse its discretion in vacating the order of default based on the lack of any wrongdoing by USAA and any prejudice to the Cummings. We further hold that the trial court erred in dismissing the Cummings' breach of contract claim because USAA was equitably estopped from raising new grounds for denying coverage. With respect to the breach of contract claim, we hold that an issue of material fact remains regarding whether the Cummings' loss was covered under the vandalism provision of their policy. Finally, we hold that the trial court improperly dismissed the Cummings' bad faith, CPA, and IFCA claims because a genuine issue of material fact remains regarding whether USAA reasonably denied the Cummings' claim.

Accordingly, we affirm the trial court's ruling vacating the order of default but reverse the order granting summary judgment, remanding for further proceedings on the Cummings' breach of contract, bad faith, CPA, and IFCA claims.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

WORSWICK, P.J.

MELNICK, J.